## DAVIDSON v. GORHAM.

A sale of a vessel of the United States, at sea, forfeits her national character, unless the new owner pursues all the requisites of the law to obtain a new registry within five days after her arrival in a port of the United States.

Where the new owner under such a sale mortgaged the vessel while still at sea, neither the bill of sale nor the mortgage being registered at the port of departure where the vessel was registered, *Held* that the mortgage was good against attaching creditors of the new owner, who levied immediately on her arrival, neither party taking the requisite steps to obtain a new registry; as the vessel had lost her national character, and was therefore not subject to the provisions of the law requiring the registry of sales and mortgages.

The registry of the bill of sale and mortgage at the expected port of arrival before her arrival, *it seems*, in no way affects the question of the national character of the vessel.

The registration of vessels is not compulsory upon their owners, it being a privilege and advantage, of which they may or may not avail themselves, as they choose.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action brought by Benjamin Davidson against William R. Gorham, for unlawfully seizing and detaining the steam-tug Underwriter from the plaintiff, who alleges himself to be the owner and entitled to the possession of said vessel. The defendant justifies the seizure under a writ of attachment directed to him as the sheriff of San Francisco county, issued out of the Superior Court of the City of San Francisco, on the 13th of November, 1854, in an action brought by Edward Gilson against the California Lumber Manufacturing Company and Henry Meiggs.

It appears from the record that the Underwriter was, on the 12th of July, 1854, a vessel of the United States, duly registered at the port of Philadelphia, and the property of S. T. Williams, a citizen of the United States; that on the 19th of July, 1854, and while the Underwriter was at sea, on her voyage from the port of Philadelphia to the port of San Francisco, Williams sold her to Henry Meiggs, of San Francisco, by a bill of sale properly executed, which was received for registry at the Custom House, San Francisco, August 23d, 1854; that Henry Meiggs, on the 8th of September, 1854, mortgaged the vessel to Alfred Godeffroy for the sum of $70,000 with interest at three per cent. per month, which mortgage was on the same day registered in the Custom House, San Francisco; that on the 6th of October, 1854, Godeffroy assigned the mortgage to the plaintiff, and the assignment was registered on the next day in the Custom House, San Francisco. The vessel arrived in San Francisco in November, 1854, when she was immediately seized by the defendants under the attachment. None of the parties interested took any steps to procure a new registry within five days after her arrival. On the trial of the cause, the jury, under the instructions of the Court to find for the plaintiff for the value of the ship, found a verdict for the plaintiff for the sum of $85,000. On motion

of defendant's attorney the Court below granted a new trial, from which order the plaintiff appealed.

*C. H. S. Williams, M. S. Latham and C. T. Emmett* for Appellant.

1. The mortgage of a chattel vests in the mortgagee the general property. Hence he may, in virtue of his title, maintain an action for the value against a wrongful taker. Woodruff *v.* Halsey, 8 Pickering Rep., 333; Brackett *v.* Bullard, 12 Metcalf Rep., 308; Codman *v.* Freeman, 3 Cushing Rep., 306; Story on Bailments, § 287; 1 Chitty on Pleading, 61, § 168; Butler *v.* Miller, 1 Comstock Rep., 496; Cutler *v.* Copeland, 6 Shepley Rep., 127; Case *v.* Winship, 4 Blackford Rep., 425; Pomeroy *v.* Smith, 17 Pickering Rep., 85; Sims *v.* Canfield, 2 Alabama Rep., 555; 4 Kent Com., 138, 154, 164.

2. When a vessel is mortgaged while at sea, and the mortgagee takes possession as soon as may be after her arrival, such possession relates back to the time of the mortgage so as to overreach intervening creditors. Joy *v.* Sears, 9 Pickering Rep., 4; Putnam *v.* Dutch, 8 Massachusetts Rep., 287; Coote on Mortgages, 256, marginal note A.

3. From the time the master of the Underwriter received notice of the transfer to the appellant he became the agent of, and held possession for the appellant. Such possession is sufficient to enable the appellant to maintain this action. Brinley *v.* Spring, 7 Greenleaf Rep., 241.

4. Hence it follows that the taking under an attachment against the mortgagor was tortious. Authorities above cited.

5. The fact that the mortgage is not recorded in the port of Philadelphia is no bar to his recovery.

The Act of Congress of July 29, 1850, deals only with vessels of the United States.

The transfer from Williams to Meiggs destroyed the registry obtained by Williams. The Underwriter from that time ceased to be a vessel of the United States. Act of Dec. 31, 1792, § 14; 1 U. S. Stat. at Large, 294. Hence she does not fall within the terms of the Act of July 29, 1850.

But the latter Act is not warranted by the Constitution of the U. S. It is claimed to be passed in virtue of the power to regulate commerce. This power to regulate commerce means a power to regulate commercial intercourse. Nearly every species of personal property may be used as agents or vehicles of commercial intercourse. Such use may be regulated by Congress. But the mere question of property or dominion in the chattel can have no influence on the rules governing its use, and cannot, in any view, become material in carrying out the power to regulate commerce, etc.

Because the commercial regulations of the United States are and must be general, consequently, whether the mere property is in A or B, or whether transferred from A to B by bill of sale, or mere delivery, is totally immaterial, since in either case the use of the chattel is

equally subject to the commercial regulations of the Federal Government.

This Act does not purport to be a regulation of commerce. It deals in terms, and only with the question of property and its mode of transfer. It is a statute of frauds, intended to protect creditors, subsequent purchasers, etc. Congress has no such power.

6. The verdict is warranted by the law and the facts of the case.

*Jo. G. Baldwin* and *O. L. Shafter* for Respondent.

The order granting a new trial was proper, for—

I. The steamer was a "vessel of the United States," being registered at the port of New York, and the mortgage was not recorded there at the date of the attachment, as required by the Act of Congress of 1850; and no actual notice was proved; and it further appeared that Gilson was a creditor of Meiggs, the mortgagor. Brown *v.* Banks, 11 Mass., 158; Pierce *v.* Rice, 1 Pick., 167; Coffin *v.* Ray, 1 Met., 212; Stowe *v.* Messerve, 13 N. H., 49.

The Act of Congress is constitutional. The power is found in the clause relating to the regulation of commerce. Words are to be rendered in the full sense of the terms—subject to no limitations but those which may be imposed by the context, the subject matter, and necessity. The strong presumption is always in favor of the validity of the statute. Fletcher *v.* Peck, 6 Cranch, 87.

All the ordinary and appropriate modes of executing an express power, are to be deemed part of the power. Story's Com., § 196.

Commerce includes traffic, intercourse, and navigation. Navigation includes ships and shipping. Gibbons *v.* Ogden, 9 Wheaton, 189; Cooley *v.* The Board of Wardens, 12 How., 299.

It is admitted, that ships may be regulated in all their relations to commerce; and it is apparent that the modes of transferring them, and a public registration of all title deeds to them, are matters having a most intimate and important connection with commerce and its ends. Hughes *v.* Morris, 12 Law and Eq., 249, note 295 and 297.

As ships belong to commerce, and as the power over commerce is not limited, the kind and degree of regulation lies solely in the discretion of Congress. Congress may even "regulate commerce for other than commercial ends," and did so in case of the embargo. Story's Com., §§ 522, 523, 527, 531. The modes in which Congress has "regulated commerce" with the Indian tribes, illustrates the same doctrine. U. S. Laws, vol. 1, pp. 137 and 329.

Again, the power to regulate commerce extends to all subjects of admiralty and maritime jurisdiction, and a mortgage of a ship is a maritime contract. 2 Story, C. C. Rep., 456; The bark Cheesan, Benedict's Admiralty, §§ 212, 213, 214, 263, 264, 265; De Louis *v.* Boit *et al.*, 2 Gal., 399. The power is exclusive. Gibbons *v.* Ogden, 9 Wheat., 189. Certainly so when it has been exercised.

II. A new trial was properly granted, for the reason that the plaintiff did not establish a right to recover under the laws of this State. The

only title of plaintiff was that of a mortgage, and he did not prove, or introduce evidence tending to prove, a mortgage, in the full legal sense of that term.

A debt is essential to a mortgage, and,

1. There was no proof that a debt ever existed, aside from the recital, and that is no evidence, except as between the parties. G. Ev., § 23, note; Richardson v. Kimball, 28 Maine, 470; Chewning v. Proctor, 2 McCord, 11, 14; Sackett v. Sackett, 7 Wend., 94; Randall v. Davis, 18 John., 7, 11, 12.

2. No proof that the debt subsisted at the date of the attachment. Randall v. Davis, 18 John., 11; Langdon v. ——, 9 Wend., 84; Edgill v. Stamfords, 3 Vt., 204; De Wolf v. Harris, 4 Mason, 519.

III. The new trial was properly granted, for the instruction that the plaintiff could recover the value of the ship, was erroneous. Forbes v. Parker, 16 Pick., 462, 466; Sedgwick on Damages, 506, 507; Spoor v. Holland, 8 Wend., 445; White v. Webb, 15 Conn., 502.

IV. Plaintiff could not recover at all before sale of equity of redemption. Fugate v. Clarkson, 2 B. Monroe.

The opinion of the Court was delivered by Mr. Justice HEYDENFELDT. Mr. Justice TERRY concurred.

The Act of Congress of July 29, 1850, "to provide for recording the conveyances of vessels," enacts "that no bill of sale, mortgage, hypothecation or conveyance of any vessel of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled."

The term, "vessel of the United States," is made by the Registry Act of Congress of 1792, a legal technical term, and by that Act and the subsequent amendatory Act of March, 1803, the requisites are expressly laid down, which entitle a vessel to that national designation. The three acts referred to are all in derogation of the common law, and the rule must be applied which requires a strict construction.

By the Registry Act of 1792, those vessels which shall be registered pursuant to the Act, and no others, "shall be denominated and deemed ships or vessels of the United States."

By the second section of the same Act, no ships or vessels are entitled to registry unless belonging wholly to a citizen or citizens of the United States, and by subsequent sections of the same Act, the sale of a registered vessel to a foreigner deprives her of the right of registration; and consequently of her privileges as a "vessel of the United States."

The sale likewise to a citizen requires the vessel to be registered anew, and a failure to do so forfeits her national character.

It will thus appear that the rules of action, prescribed in the Acts referred to, are very strict, and everything necessary to constitute a "ves-

Davidson v. Gorham.

sel of the United States," is required to appear affirmatively, and for this purpose the Act requires the oath of the interested party.

It appears from the facts in this case that the steamer Underwriter was, on the 12th of July, 1854, a "vessel of the United States," duly registered at the port of Philadelphia, and the property of one Williams, a citizen of the United States. On the 19th of July, 1854, while the Underwriter was at sea, on a voyage from the port of registry to the port of San Francisco, she was sold by her owner to Henry Meiggs, of San Francisco, California, and a bill of sale was properly executed. While the vessel was yet at sea she was mortgaged by Meiggs to one Godeffroy, and the mortgage assigned by Godeffroy to Davidson, the plaintiff. All of these instruments were recorded in the Custom House of San Francisco, but not in the Custom House at Philadelphia, where the vessel was registered.

It is now insisted that the mortgage is void against an attaching creditor of Meiggs, under and by virtue of the Act of 1850, heretofore cited.

Now, to maintain the affirmative of this proposition, it is absolutely necessary to show that the vessel in controversy was a "vessel of the United States," within the meaning of the registration Acts of Congress at the time of her seizure, and to do this it is necessary to show affirmatively every incident which entitles her to that privilege, or to show as much as would, under the Acts referred to, entitle her to a new register.

That she was registered in Philadelphia does not help her to the position of a national vessel, because a few days after leaving that port she was sold to another person. The Act of 1803 would give her still the character of a "vessel of the United States," until her first arrival in the United States thereafter, provided she was sold to a citizen or citizens of the United States. But therein consists the difficulty of the respondent's case. It is nowhere shown that Meiggs, the purchaser, was a citizen of the United States; nor does it appear, except by the recitals in the various instruments of conveyance, that he was a resident of the United States, and these recitals would be no proof of that fact; much less would they prove his citizenship. The case, therefore, as it stands, does not show that Meiggs would be entitled to a register, and consequently in the absence of the fact that he was a citizen, the vessel had lost its national character from the time of the sale by Williams.

Furthermore, the registration of vessels is not compulsory upon their owners. It is a privilege and advantage which the law offers to them, but of which they may or may not avail themselves, as they choose. It was, therefore optional with Meiggs (if he was a citizen) to take out a new register within the five days allowed after the arrival of the vessel in San Francisco. The only thing which the law required of him, was to deliver up the first certificate, and this he was obliged to do under a penalty, whether he registered anew or not.

By the Act of 1792, the sale of a vessel, even to a citizen, took away

her right to be deemed a "vessel of the United States," and no provision was made to continue her national character and privileges when she happened to be at sea at the time of the sale. But the additional Act of 1803 was intended to cure this defect, and in case of such a sale it gave to the vessel her national character upon her first arrival, after the sale, into the United States; provided that the new owner should pursue all the requisites of the law for the purpose of obtaining a registration within five days after her arrival. This proviso, of course, qualifies the new right or privilege given by the Act, which is dependent upon it, and unless the requisitions of the proviso are followed strictly, the new right does not accrue; and the vessel remains in the same condition as if the Act of 1803 had not been the law, or in other words, she is left to her condition under the Act of 1792, which, in this case, forfeits her privileges as a "vessel of the United States," from the time of her sale; for there is nothing to show that either Meiggs, or any one on his behalf, availed himself of the proviso of the Act of 1803, in which event alone, as I have shown, would the new provision of that law take the vessel from under the rule of the Act of 1792.

From these views it follows, that at the time of the seizure of the Underwriter, by the defendant, as sheriff, she was not a "vessel of the United States," within the meaning of either of the Acts which I have referred to. That consequently it was not incumbent upon the mortgagee to record his mortgage at the port of Philadelphia, in order to hold a valid lien against all persons, because the property mortgaged is not within the description and meaning of the Act of 1850, and therefore the plaintiff's right to recover, being established by the record, beyond doubt, the order for a new trial must be reversed, and the judgment of the Court below, in favor of the plaintiff, must stand affirmed.