## In re PENGLASE SAND & GRAVEL CO.

### BOWMAN v. ANDRES.

No. 5321.

Circuit Court of Appeals, Seventh Circuit.

March 26, 1935.

Rehearing Denied May 14, 1935.

594

I. Ray Carter, of Danville, Ill., and Walter T. Gunn, of Danville, Ill., for appellant.

P. J. Kolb, of Mt. Carmel, Ill., and A. M. Kershaw, of Grayville, Ill., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a judgment entered by the District Court approving the report of the referee in bankruptcy.

On July 26, 1932, an involuntary petition in bankruptcy was filed against the Penglase Sand & Gravel Company, and on August 17, 1932, it was adjudged a bankrupt.

A trustee was elected and a petition filed by him to sell a dredge boat, known as the Wolverine free from liens and encumbrances. Appellant, Edwin P. Bowman, filed his petition to reclaim the dredge boat.

On November 30, 1926, the Penglase Engineering Company, predecessor of the Penglase Sand & Gravel Company, entered into a contract with one Orie T. Dunlap, a contractor who had been purchasing sand and gravel from it for some time, and contemporaneously a contract was entered into between the said Dunlap and one Frank W. Ingram, a boat builder, by the terms of which Ingram was to build a new boat, to be known as the Wolverine, and to take as part payment an old boat owned by the Penglase Engineering Company. Dunlap agreed to pay the remainder of the purchase price and the Penglase Engineering Company promised to pay the same amount to Dunlap—the obligation to be represented by four notes due in six, twelve, eighteen, and twenty-four months, in the amount of $2,250 each. The title to the new boat was to be in Dunlap. The boat was constructed and delivered to the Penglase Engineering Company.

In May, 1927, the Penglase Engineering Company went out of business and the Penglase Sand & Gravel Company was formed in its place. At about the time of the reorganization, Penglase Sand & Gravel Company gave to Dunlap its promissory notes in lieu of those of the Penglase Engineering Company, three of which notes remained unpaid at the time of the adjudication in bankruptcy. The notes and contract of November 30, 1926, were assigned by Orie T. Dunlap to Edwin P. Bowman. The vessel was at all times in the custody and control of the bankrupt corporation, and although Bowman made demands of payment, he took no steps to enforce payment or reclaim the boat.

On September 23, 1932, a certificate of enrollment of the vessel was issued to A. H. Bowman by the Collector of Customs of the Port of St. Louis, which stated that the original enrollment had been lost; that the said vessel was owned by Penglase Sand & Gravel Company; and that A. H. Bowman, brother of appellant, was the master of the vessel.

The referee heard the petition of the bankrupt to sell the vessel free of appellant's lien and the petition of appellant to reclaim the vessel under the conditional sales contract, and entered an order disal-

lowing appellant's petition and allowing that of the trustee. He found that the vessel was of such a character as was required to be enrolled by the laws of the United States and that the conditional sales contract was not good as against the trustee under the federal statutes which make it mandatory for any sale, mortgage, or lien to be recorded in the proper port of entry. He said:

"While it may be argued that a conditional sales contract is not a mortgage or bill of sale certainly the very purpose for which the statute pertaining to maritime property was enacted would be violated if no demands could attach as against a secret lien of this nature. * * * Under this law and under any reasonable construction of this United States Statute would it not have been possible for any judgment creditor, prior to bankruptcy, to have effectively levied on this vessel under proper execution for any obligation of the Penglase Sand and Gravel Company? If such is the case the trustee has exactly the same right. He takes his title as a judgment creditor armed with execution, and the lien insisted upon by and in the reclamation petition filed in this cause is of no avail as to third parties without notice under the statute, it is the opinion of the referee that such claim may be successfully resisted by the trustee in bankruptcy."

Upon petition for review of the referee's order, the District Court approved the report for the reasons set forth in the referee's memorandum and on the authority of The Underwriter (D. C.) 3 F.(2d) 483.

■ The pertinent provisions of the statute (46 USCA) are as follows:

"Section 251. *Vessels of United States.* Vessels of twenty tons and upward, enrolled in pursuance of this chapter, and having a license in force, or vessels of less than twenty tons, which, although not enrolled, have a license in force, as required by this chapter, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries."

"§ 1012. *Record at home port.* No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel. · Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document."

There can be no question but that the Wolverine was a vessel of the character that might be enrolled by the laws of the United States. Whether enrollment was, or was not, obligatory is a question which is not now before us. The Wolverine did not become a vessel of the United States until it was, in fact, enrolled, though built and owned by citizens of the United States. The Merritt, 17 Wall. (84 U. S.) 582, 21 L. Ed. 682; The Alta (C. C. A.) 136 F. 513.

■ The proof offered on the question of enrollment of the Wolverine is not as clear as might be desired. The vessel was enrolled on September 23, 1932, a month after the Penglase Sand & Gravel Company had been adjudged a bankrupt. In the certificate of enrollment appears the statement that A. H. Bowman, president of Penglase Sand & Gravel Company, declared under oath that the company is sole owner of the vessel called the Wolverine, and that the vessel was previously registered but that the documents are lost. The only other evidence respecting the registering of the vessel occurs in the testimony of Edwin P. Bowman, who testified: "I suppose the boat was enrolled under the laws of the United States, but I don't know when it was first enrolled. I don't know whether it was enrolled shortly after it was put into service or not. I am sure it was enrolled when Penglase Sand and Gravel Company took it over because all vessels have to be."

While the evidence is not strong, there being nothing in the record to the contrary, it is sufficient to sustain the conclusion of the referee and the District Court that the Wolverine was a vessel of the United States.

■■ The contract of November 30, 1926, between Penglase Engineering Company and Ora T. Dunlap, was a conditional sales contract and its character was not changed by the giving of the new notes by the Penglase Sand & Gravel Company in lieu of those described in the contract. There was a valid assignment of the contract and the new notes were simply new evidence of the obligation. The title to the vessel remained in Dunlap. Patterson v. Wade (C. C. A.)

115 F. 770, certiorari denied 188 U. S. 741, 23 S. Ct. 849, 47 L. Ed. 677; Lee v. Hollister (D. C.) 5 F. 752; National Bank of Commerce of Kansas City, Mo., v. Rockefeller (C. C. A.) 174 F. 22. The cases of In re A. E. Richardson Co. (C. C. A.) 294 F. 451, and Maxcy-Barton Organ Co. v. Glen Bldg. Corp., 355 Ill. 228, 189 N. E. 326, are clearly distinguishable upon their facts.

Some time before the date of the transfer of title to the Wolverine from Dunlap to appellant, it became a "vessel of the United States." The transfer from Dunlap to appellant was, by the laws of the United States (46 USCA § 1012), invalid against any person other than the grantor, his heirs, or devisees, or persons having actual notice thereof, until it was recorded in the office of the Collector of Customs at the home port of the vessel.

Affirmed.