[Civ. No. 11036.   First Appellate District, Division Two.—April 18, 1939.]

ATLAS IMPERIAL DIESEL ENGINE CO. (a Corporation), Plaintiff and Respondent, v. ANTONIO CRISCUOLO et al., Appellants; MATTS WERNER SWEINS et al., Cross-defendants and Respondents.

H. W. Hutton for Appellants.

Thatcher, Jones & Casey for Respondents.

STURTEVANT, J.—In an action involving various claims to a small motorboat the trial court denied the defendants any relief under a mortgage they claimed to hold on the boat. From that judgment the defendants have appealed.

When the boat was being constructed the owners executed a mortgage to the defendants. That mortgage was never recorded in the office of the United States collector of customs of San Francisco, the home port of the vessel. For that reason the plaintiff claims that as to it the mortgage was invalid. For various reasons the defendants claim it was valid and an enforceable obligation against the plaintiff and its vendees. An understanding of the controversy involves the following facts:

In 1929 Antonio Di Maggio resided in the county of Monterey and was engaged in fishing in that neighborhood. He commenced the construction of the boat in Monterey Bay. He contacted Antonio Criscuolo, one of the defendants, who agreed to make him a loan for the purpose of building the boat. As a result of that agreement Di Maggio and his wife executed to Criscuolo and his wife a chattel mortgage on the boat which was then being constructed. That chattel mortgage was recorded in 1929 in the office of the recorder of Monterey County, but at no time was it ever recorded in the office of the collector of customs at San Francisco. On the 27th day of November, 1929, Di Maggio entered into a conditional sales agreement with Atlas Imperial Diesel Engine Company under the terms of which the latter agreed to install a ninety horsepower engine in the vessel. At that time the vessel was described as "to be called the General Persh-

ing''. The contract price mentioned in said instrument was $6,900. The contract further provided that as soon as the vessel was completed and documented in the office of the United States collector of customs as a vessel of the United States the owner would execute a promissory note and a mortgage to secure its payment. On January 23, 1930, the hull was taken to the plaintiff's plant at Oakland and the conditional sales contract was performed. On February 14, 1930, the vessel was licensed by the United States Department of Commerce as ''a licensed vessel of the United States under twenty tons''. On February 12, 1930, the owners executed the note and mortgage hereinabove mentioned and on the 18th day of February, 1930, the mortgage was duly recorded in the office of the collector of customs of the port of San Francisco. Except as will hereinafter be mentioned, neither the plaintiff nor its vendees knew of the existence of a mortgage in favor of the defendants nor of the recordation of said mortgage in Monterey County. On March 8, 1932, Di Maggio was in default of his payments and, in the presence of Criscuolo, he executed a bill of sale to M. A. Dent, assistant secretary of the plaintiff company, who took title to the vessel as trustee. It was recorded in the office of the collector of customs on April 18, 1932. After the vessel had been completed it was taken to Monterey and operated by Di Maggio. It was so operated until March 28, 1932, when it was taken to San Francisco by M. A. Dent, the said trustee. While in San Francisco, on the 15th day of July, 1932, the vessel was sold to Matts Werner Sweins, who paid the plaintiff $5,000 therefor. The trial court made a finding that Sweins ''was a *bona fide* purchaser for value without notice of said Criscuolo's said mortgage''. Later Sweins took the vessel to Eureka, where he is now operating it and claims to be the owner. Such other facts will hereinafter be stated as it becomes necessary.

■ The defendants contend that they held and now hold a valid, subsisting chattel mortgage on the vessel. (*Foster* v. *Perkins*, 42 Me. 168; *Stinson* v. *Minor*, 34 Ind. 89.) The plaintiff replies it concedes the claim of the defendants was sound down to February 14, 1930, when the vessel was enrolled and duly licensed as hereinabove set forth. However, continuing, the plaintiff asserts that the effect of the enrollment and licensing was to terminate as to the plaintiff the

mortgage lien of the lefendants. (46 U. S. C. A., sec. 1012; Civ. Code, sec. 2958; *Perkins* v. *Emerson*, 59 Me. 319.) While all of the authorities are not in accord, we think the contention of the plaintiff should be sustained. The facts in *Foster* v. *Perkins, supra,* show that that case is not in point. Foster held a mortgage from Balkam dated July 26, 1854, one dated December 9, 1854, and both recorded under state laws at Robbinston. He also held a mortgage dated December 27, 1854, which was recorded the same day in the collector's office for the port of Passamaquoddy. On December 22, 1854, the sheriff attached the vessel. The Supreme Court of Maine held that the plaintiff, Foster, was entitled to replevy the vessel. But, on page 175, the court said: "As to what would be the effect of the federal statute, before cited, upon the rights of attaching creditors, in the case of a mortgage not recorded as it requires, the mortgage or attachment being made after the registry or enrollment of the vessel, we intend to give no opinion." The decision in *Stinson* v. *Minor, supra,* is stated in the head-note: "Where before a vessel has been registered or enrolled as a vessel of the United States, a mortgage is executed thereon and duly recorded according to the law of this state, it will be valid against a person purchasing such vessel, for value and without actual notice of the mortgage, after the vessel has been enrolled in the office of the surveyor of a port of delivery, although the mortgage be not recorded in said office." In so far as we are advised, that decision has not been followed. (2 Jones, Chattel Mortgages and Conditional Sales, 6th ed., sec. 527, and notes.) However, the writer is not inclined to disagree with the conclusion reached in the Stinson case when considered in the light of the facts involved. The steamer Curlew, before she was enrolled, was mortgaged; the mortgage was recorded as provided in the state statutes; later she was attached and sold at public auction, to M, who had full knowledge of the existence of the note and mortgage; later there were other transfers. Finally in 1867, the boat was sunk and wrecked and her machinery and boilers were all that were involved in the controversy. True it is that while at Evansville she was enrolled and licensed, but it is equally true that by being sunk and wrecked she had lost her identity as a vessel of the United States. In principle that case is the same as *Davidson* v. *Gorham,* 6 Cal. 343. The head-note states: "A sale of a vessel of the United

States, at sea, forfeits her national character, unless the new owner pursues all the requisites of the law to obtain a new registry within five days after her arrival in a port of the United States."

*Perkins* v. *Emerson, supra,* is, we think, directly in point and supports the contention of the plaintiff in this case. Perkins built the sloop Emma. While she was still on the stocks and incomplete, July 6, 1869, Perkins executed the note and mortgage. The mortgage was recorded in the office of the city clerk on August 11, 1869. The sloop was launched in August, 1869. She was licensed on August 6, 1869. The mortgage was never recorded with the collector of customs. On August 15, 1870, she was sold to the defendant, who had no notice whatever of the mortgage except the record in the city clerk's office. The court held that such recordation was no notice to the defendant and that he was entitled to replevy the vessel. In that case, as in this case, it was contended that a recordation pursuant to the state statute would be valid even after the vessel was enrolled and licensed. Replying to that contention, on page 320, the court said: "We think it will not. Before registry or enrollment a vessel, like any other article of personal property, is subject to the laws of the state. After registry or enrollment it comes under the operation of the laws of the United States. Before the vessel is registered or enrolled, a mortgage of it will be valid if recorded agreeably to the laws of the state. After it is registered or enrolled, a mortgage of it will not be valid unless recorded as required by the laws of the United States. To hold otherwise would go far to defeat the very object which the registry laws of the United States were intended to secure."

In effect the rule stated in the case last cited has been followed in California from an early date. In "An Act Concerning Fraudulent Conveyances and Contracts", passed April 19, 1850, section 17, it was provided: "No mortgage of personal property hereafter made shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee." In section 1 of chapter 27, United States Statutes at Large, 1850, it was provided: "That no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid

against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled.'' In *Mitchell* v. *Steelman,* 8 Cal. 363, the following facts were before the court: On June 12, 1854, Steelman executed his note for $1250 and to secure its payment executed to Swain a mortgage upon the schooner Falmouth. The mortgage was duly recorded in the custom house. On April 30, 1855, Swain assigned the mortgage to Mitchell. The schooner was permitted to remain in possession of Steelman, who sold his interest in the vessel to Lawrence. Mitchell brought his action to foreclose the mortgage. Lawrence claimed that the mortgage was invalid because there was not a change of possession as required by section 17 of the Act of 1850, *supra.* Commencing on page 370, Mr. Justice Burnett, writing the opinion for the court, said: ''The provisions of both acts, relate to the validity of the *same* instruments as against the *same* parties. To make the instrument valid, the act of Congress requires it to be recorded, while our statute requires actual possession to be taken of the property itself. The *entire* right of the party to the same description of property, depends in the contemplation of each act, *solely* and *exclusively* upon that which it *alone prescribes.* If, then, Congress intended to give a party certain perfect rights, upon the performance of certain specified conditions, can the act of the legislature require the party to do *more* without abridging his already perfected rights. And if these perfected rights are abridged by the statute, is it not substantially in conflict with the act of Congress? The act of Congress intended to accomplish a given *end,* by the use of specified *means,* and that end is defeated by the statute, when it requires *other* means to be used to attain the same end. The act of Congress expressly makes the record of the instrument full notice as to third parties; while the statute says it is not such notice.'' Continuing, the court held that the act of Congress was controlling and that the statute of California was inoperative. The rule in the Mitchell case continued down to the enactment of the codes in 1872. In article III, chapter 2, title 14, section 2955 et seq., provisions were made for executing mortgages on personal property without a change of possession. Section 2958, as then en-

acted, provided: "A mortgage of any vessel or part of any vessel under the flag of the United States is void as against any person (other than the mortgagor, his heirs, and devisees, and persons having actual notice thereof) unless the mortgage is recorded in the office of the collector of customs where such vessel is registered or enrolled." In section 2971 it was provided that sections 2957, 2959–2966 do not apply to any mortgage of a ship or part of a ship under the flag of the United States. In explanation of sections 2958 and 2971 the code commissioners cited and quoted from the act of Congress of July 29, 1850. The act of Congress has been codified. (46 U. S. C. A., sec. 1012.) That section reads: "Sec. 1012. Record at home port. No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel. Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document." A comparison shows that in every material respect the section is the same as section 1 of the Act of 1850, *supra*.

The weight of the above-mentioned authorities is to the effect that the enrollment of a vessel pursuant to section 1012, U. S. C. A., has the effect of nullifying all purported encumbrances executed prior to such enrollment except as provided in said section. Turning to sections 2955–2978 of the Civil Code we think it is clear that they were designed to give the rule stated in section 1012, U. S. C. A., full and complete operation and effect. This is so because the federal statutes clearly contemplate that when a vessel is enrolled, each party may protect his rights by obtaining a new conveyance and filing it in the office of the collector of customs as provided in the federal statutes. (*In re Empire Shipbuilding Co.*, 221 Fed. 223.) But it is equally clear that said statutes provide that the records of the collector shall be inclusive and exclusive as shown above.

*White's Bank* v. *Smith,* 74 U. S. (7 Wall.) 646 [19 L. Ed. 211], and *Aldrich* v. *Aetna Ins. Co.,* 75 U. S. (8 Wall.) 491 [19 L. Ed. 473], although not directly in point nevertheless support the reasoning above stated.

*In re Empire Shipbuilding Co., supra,* states a rule that is also controlling in this case. In 1911 United Shores was being constructed by Shipbuilding Company for Buffalo and Fort Erie Ferry & Railway Company. On May 31, 1911, the Shipbuilding Company executed a bill of sale of the vessel then in process of being constructed. The vendee executed a mortgage thereon to Commonwealth Trust Company. The vendee then executed a bill of sale back to Shipbuilding Company. On August 9, 1911, the vessel was enrolled and licensed. On the same day the bill of sale and the mortgage were recorded in the office of the collector of customs. The court stated: "In our opinion the mortgage was not one recordable in the custom house, and the collector should have refused the request to record it. Since it is not recordable, its improper recording does not operate as constructive notice under section 4192." (Section 4192 of Revised Statutes being the same statute codified as section 1012, 46 U. S. C. A.)

■ Heretofore Criscuolo commenced an action in equity to obtain the enforcement of his rights. That action was commenced in the District Court of the United States for the Northern District of California and was later appealed to the Circuit Court of Appeals, Ninth Circuit. The result of that litigation was a dismissal of his bill. (*Criscuolo* v. *Atlas Imperial Diesel Engine Co.,* 84 Fed. (2d) 273.) At this time Criscuolo claims said decision was *res judicata* in his favor. We think it is sufficient to state that we have carefully read the decision and we find nothing in it that was *res judicata* of any issue involved in this action.

■ The defendants also contend the plaintiff had actual notice of their mortgage at the time the above-mentioned mortgage was executed by Di Maggio to the engine company. That question was made an issue and was fully tried out in the trial court. The trial court made a finding in favor of the plaintiff to the effect that the latter did not have actual notice of the mortgage recorded in Monterey County. The defendants assert said finding is contrary to the evidence. They base that assertion on the fact that about thirty days before the mortgage was executed in favor of the engine company an agent of an insurance company mailed to said

engine company a copy of an insurance policy. They call to our attention that said policy contained the following: "Nino Di Maggio, on account of whom it may concern, in case of loss, to be paid in funds current in the United States to assured, Atlas Imperial Diesel Engine Company, Antonio Criscuolo and Angelo Siino, or order, as their respective interests may appear, does make insurance . . . " But that passage was only a part of the evidence introduced on the subject. The officers of the plaintiff testified they had no notice. The evidence was not clear and certain that the copy of the policy was ever mailed. Furthermore, there was evidence that the fact the names were inserted did not imply said persons were owners or mortgagees. Under these circumstances the finding of the trial court may not be disturbed.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 15, 1939.