William R. McCORKLE and Jeanne
D. McCorkle

v.

The FIRST PENNSYLVANIA BANK-
ING & TRUST CO.

Civ. No. 70–158–K.

United States District Court,
D. Maryland.

Dec. 7, 1970.

Malcolm B. Kane, Columbia, Md., for plaintiffs.

James N. Vaughan, Ellicott City, Md., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, asking this Court to declare that the gas screw yacht "Safari," No. 507907, is not subject to a claim asserted by the defendant, The First Pennsylvania Banking & Trust Co., Philadelphia, a Pennsylvania corporation.[1]

Plaintiffs have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. There is no factual dispute herein. Thus, the case is ripe for consideration under Rule 56.

Defendant asserts a claim to the "Safari" arising from a purchase money security interest which defendant obtained from one Patrick J. Murphy in October, 1966. At that time, defendant properly perfected its security interest by filing on October 25, 1966 a financing statement under the Uniform Commercial Code, Md.Ann. Code art. 95B, § 9–401(1), in the Circuit Court for Harford County, Maryland.[2] At that time, also, the "Safari" had not been registered as

---

1. Defendant has no office in Maryland. Plaintiffs are citizens of Pennsylvania. Jurisdiction exists pursuant to this Court's general admiralty jurisdiction, 28 U.S.C. § 1333 in the light of the Ship Mortgage Act of 1920, 46 U.S.C. §§ 11 and 911, et seq., and 28 U.S.C. § 2201. Cf. 46 U.S.C. § 951. Service under Fed. R.Civ.P. 4(e) is alleged to have been accomplished under the Maryland Long-Arm Statute, Md.Ann.Code art. 75, § 96,
and Md.R.Proc. 107. Counsel for defendant has advised this Court that defendant is not raising herein any objections as to service or venue. See 2 Moore, Federal Practice ¶ 4.02 [4] (2d Ed.).

2. It is assumed, for purposes of this opinion, that Harford County was the proper jurisdiction in which to file the security instrument, and that the filing was otherwise appropriately accomplished in accordance with the statute.

a "vessel of the United States," with its home port at Baltimore, Maryland, pursuant to 46 U.S.C. § 11. However, sometime in March, 1967, Murphy did enroll in the Collector's office in Baltimore the "Safari" as such a vessel, but did not disclose or indicate in connection with that enrollment any reference to any interest in that vessel of the defendant or of any person other than Murphy himself.

Plaintiffs bought the "Safari" from Murphy on December 19, 1967. Before so doing, plaintiffs searched the "Safari's" Abstract of Title in the Baltimore Customs House. That search disclosed no mortgages, liens or encumbrances against the boat. Indeed, plaintiffs did not learn of defendant's interest until January 30, 1969 when defendant, by letter, informed plaintiffs of the security interest defendant had obtained from Murphy.[3]

The perfection by defendant of its security interest prior to the "Safari" being enrolled as a "vessel of the United States," does not enable that security interest to prevail against the rights of subsequent bona fide purchasers. This is so because defendant did not record its mortgage with the Collector of Customs of the vessel's home port, in accordance with the Ship Mortgage Act, 46 U.S.C. § 921.[4]

Defendant relies on Stinson v. Minor, 34 Ind. 89 (1870). In Atlas Imperial Diesel Engine Co. v. Criscuolo, 32 Cal. App.2d 244, 89 P.2d 674, 676–677 (1939), cert. denied, 308 U.S. 620, 60 S. Ct. 265, 84 L.Ed. 517 (1940), reh. denied, 308 U.S. 639, 60 S.Ct. 382, 84 L. Ed. 531 (1940), the Court wrote:

\* \* \* The decision in Stinson v. Minor, supra, is stated in the headnote: "Where before a vessel has been registered or enrolled as a vessel of the United States, a mortgage is executed thereon and duly recorded according to the law of this State, it will be valid against a person purchasing such vessel, for value and without actual notice of the mortgage, after the vessel has been enrolled in the office of the surveyor of a port of delivery, although the mortgage be not recorded in said office." In so far as we are advised, that decision has not been followed. 2 Jones, Chattel Mortgages and Conditional Sales, 6th ed., sec. 527, and notes. However, the writer is not inclined to disagree with the conclusion reached in the Stinson case when considered in the light of the facts involved. The steamer Curlew, before she was enrolled, was mortgaged; the mortgage was recorded as provided in the state statutes; later she was attached and sold at public auction, to M, who had full knowledge of the existence of the note and mortgage; later there were other transfers. Finally in 1867, the boat was sunk and wrecked and her machinery and boilers were all that were involved in the controversy. True it is that while at Evansville she was enrolled and licensed, but it is equally true that by being sunk and wrecked she had lost her identity as a vessel of the United States. In principle that case is the same as Davidson v. Gor-

---

3. There is no contention herein that plaintiffs had actual knowledge of defendant's interest before January 30, 1969.

4. 46 U.S.C. § 921 provides in pertinent part as follows:

§ 921. *Sale, conveyance, or mortgage of vessel of United States; record*

(a) No sale, conveyance, or mortgage which, at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States, or any portion thereof, as the whole or any part of the property sold, conveyed, or mortgaged shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel \* \* \*.

ham, 6 Cal. 343. The head-note states: "A sale of a vessel of the United States, at sea, forfeits her national character, unless the new owner pursues all the requisites of the law to obtain a new registry within five days after her arrival in a port of the United States."

Perkins v. Emerson [59 Me. 319 (1871)], is, we think, directly in point and supports the contention of the plaintiff in this case. Perkins built the sloop Emma. While she was still on the stocks and incomplete, July 6, 1869, Perkins executed the note and mortgage. The mortgage was recorded in the office of the city clerk on August 11, 1869. The sloop was launched in August, 1869. She was licensed on August 6, 1869. The mortgage was never recorded with the collector of customs. On August 15, 1870, she was sold to the defendant, who had no notice whatever of the mortgage except the record in the city clerk's office. The court held that such recordation was no notice to the defendant and that he was entitled to replevy the vessel. In that case, as in this case, it was contended that a recordation pursuant to the state statute would be valid even after the vessel was enrolled and licensed. * * *

In the *Perkins* case, the Maine Court stated (at 320–321):

* * * The question is not * * * whether a mortgage recorded agreeably to the laws of the State is valid before the vessel is enrolled, but whether it will continue to be valid after such enrollment. * * *

We think it will not. Before registry or enrollment a vessel, like any other article of personal property, is subject to the laws of the State. After registry or enrollment it comes under the operation of the laws of the United States. Before the vessel is registered or enrolled, a mortgage of it will be valid if recorded agreeably to the laws of the State. After it is registered or enrolled, a mortgage of

it will not be valid unless recorded as required by the laws of the United States. To hold otherwise would go far to defeat the very object which the registry laws of the United States were intended to secure.

*See also* Foster v. Chamberlain & Co., 41 Ala. 158 (1867). And in The Vigilancia, 73 F. 452, 455 (C.C.A. 2, 1896), the Court stated:

State statutes are inoperative as to vessel mortgages which have been properly recorded pursuant to the laws of congress.

In Stewart & Co. v. Rivara, 274 U.S. 614, 618, 47 S.Ct. 718, 720, 71 L.Ed. 1234 (1927), the Supreme Court of the United States noted:

The Recording Act (9 Stat. 440) was passed to furnish information as to title and to protect bona fide purchasers. * * *

In an earlier case, White's Bank of Buffalo v. Smith, 7 Wall. 646, 74 U.S. 646, 653–654, 19 L.Ed. 211 (1869), involving the enrollment statute, the Court had discussed the policy in greater detail:

* * * [T]here can be very little difficulty on the part of a purchaser or mortgagee in ascertaining the true condition of the title * * * from an examination of the records of the collector's office at the several home ports of the vessel. * * * [This] system * * * possesses very great advantages over the filing of these instruments in the clerks' offices where the vendor or mortgagor happened to reside. * * *

The defendant bank, as a condition precedent to making its loan to Murphy, could have insisted that the "Safari" be enrolled as a "vessel of the United States," and could have caused its mortgage to have been recorded with the Collector of Customs in Baltimore, so that a later bona fide purchaser, such as plaintiffs, could have found the same upon checking the records of the Collector of Customs in Baltimore. Defendant's failure so to record requires that

plaintiffs be granted the declaratory relief they seek herein with regard to the defendant bank's asserted security interest.

Accordingly, it is, this 7th day of December, 1970, by the United States District Court for the District of Maryland, ordered and decreed:

1. The bill of complaint for declaratory relief be, and it is hereby, granted.

2. The title of William R. McCorkle and Jeanne D. McCorkle to the gas screw yacht "Safari," No. 507907, is not subject to the mortgage held by defendant and filed in the Circuit Court for Harford County on October 25, 1966.

3. The defendant shall permanently cease and desist from asserting any such claim against said vessel.

4. Costs are to be paid by defendant.

5. The Clerk is directed to send copies of this Memorandum and Order to counsel for both parties.