Wm. H. FRYE, Trustee in Bankruptcy of the Estate of Crites and Sailer Construction Company, Inc., Bankrupt, Respondent,

v.

FARMERS AND MERCHANTS BANK OF CAPE GIRARDEAU, Missouri, a corporation, Appellant.

No. 38551.

Missouri Court of Appeals, St. Louis District, Division Four.

Dec. 13, 1977.

Motion for Rehearing and/or Transfer Denied Jan. 18, 1978.

Application to Transfer Denied March 13, 1978.

A. M. Spradling, III, Spradling, Drusch, Dillard & Spradling, Cape Girardeau, for appellant.

Raymond H. Vogel, Vogel & Frye, Cape Girardeau, for respondent.

ALDEN A. STOCKARD, Special Judge.

This is an action by the trustee in bankruptcy to recover funds paid by Crites and Sailer Construction Company, the bankrupt corporation (hereafter referred to as the "Company"), to the Farmers and Merchants Bank of Cape Girardeau, Missouri (hereafter referred to as the "Bank") to satisfy a personal debt of Loy E. Crites, President of the Company. Trial was before the court. Judgment was entered for the Trustee, and the Bank has appealed. We affirm.

The Company was engaged in the general construction business. Loy E. Crites was president, Calvin Sailer was vice-president, and Dorothy Catlett was secretary-treasurer. These three constituted the board of directors. Mr. Crites had other business interests including a personally owned trucking company. On March 14, 1972 he borrowed $10,000 from the Bank and executed his personal note. He negotiated the loan with Mr. Narvol A. Randol, president of the Bank. According to Mr. Randol, Mr. Crites told him that the Company was expecting a "large sum of money from the Chaffee Housing Authority on a housing project they were about to complete, and * * * as soon as they received the money from the Housing Authority he would pay this loan off."

On May 2, 1972, acting in his capacity as president of the Company, Mr. Crites borrowed $35,000 from the Bank and executed a note in that amount on behalf of the Company.

On June 23, 1972, pursuant to instructions from Mr. Crites, Dorothy Catlett met the head of the Chaffee Housing Authority at the Bank and received from him a check in the amount of $54,619.23 which she deposited to the Company's account.

There is a variance in the evidence as to what then occurred. According to Dorothy Catlett, she did not know about the $10,000 personal note of Mr. Crites, and she "wanted to pay just the thirty-five thousand dollar note because that is all [she] knew about," but Mr. Randol "insisted that we had to pay more than that" and said "there are some notes to be paid off." He then directed a clerk "to bring in the notes on Crites and Sailer." The clerk brought in a "handful" and Mr. Randol "spread them out in front of him and said, 'This is the Thirty-five Thousand Dollar note.'" He then said, "we've got two or three more of them that ought to be paid." When Mrs. Catlett "looked at the amounts" she replied that "we don't have enough money to pay all of these." Mrs. Catlett knew that the Company "had several ten thousand dollar notes" at the Bank. Mr. Randol then said that

"Mr. Crites had told him that this Thirty-five Thousand and the Ten Thousand notes were to be paid that day." He also stated that the $10,000 note, "was dated earlier than any other notes and he wanted that one paid." It was Mrs. Catlett's understanding that "all the notes were supposed to be Crites and Sailer's; [she] didn't know that there were any Loy E. Crites personal notes mixed up in them." She then signed a check payable to the Bank drawn on the Company's account in the amount of $45,585.42 which included the principal of the two notes and the accrued interest. The amount was filled in by a Bank employee at the direction of Mr. Randol who did not tell her that the $10,000 note was a personal obligation of Mr. Crites. The two notes were marked paid and she took them to the Company office and placed them in the "notes paid file." In August she was unable to balance the note account, and with the help of an auditor it was then discovered that the $10,000 note paid with Company funds was the personal obligation of Mr. Crites. She then called Mr. Randol and he commented that "the bank was paid off," and that it was now a matter "between Mr. Crites and Crites and Sailer." When she spoke to Mr. Crites he said, "Well that's just a little bit more I owe Crites and Sailer." No effort was made by the Company to collect the note from Mr. Crites before it was forced into bankruptcy.

Mr. Randol's version as to what occurred is somewhat different. He testified that Mrs. Catlett came to the bank and deposited the check from the Housing Authority. He then had "the Crites and Sailer notes" brought out, and he asked Mrs. Catlett "which ones she wanted to pay," and she looked at them and selected the note for $35,000 and the personal note of Mr. Crites for $10,000. He did not tell the clerk to bring the personal note of Mr. Crites, but the clerk "did it himself." Although Mr. Crites had previously borrowed money from the bank and executed personal notes, Mr. Randol could not recall that any previous personal note of Mr. Crites had been paid with Company funds.

The other notes of the Company that were produced with the $35,000 note apparently were all secured because, although the Company owed money to the Bank when it went into bankruptcy, at the time of trial the Bank had collected all obligations by way of foreclosure.

■ The trial court did not enter findings of fact and conclusions of law, none being requested, but entered judgment for the Trustee and against the Bank for $10,206.25 plus interest from May 21, 1973, the date suit was filed. We deem the factual issues to have been found in accordance with the result reached. *Mid-Continent National Bank v. Bank of Independence*, 523 S.W.2d 569 (Mo.App.1975). By reason of the limitations on our scope of review, Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we are to affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.

Appellant first contends that the Company "ratified the actions of the corporate officer paying off the personal obligation of another corporate officer with corporate funds through acquiescence or by implication by not objecting * * * within a reasonable time after the payment by the corporation to the bank was made."

There was no formal approval or ratification by the board of directors of the Company for the use of funds of the corporation to pay the personal obligation of the president of the corporation. Assuming that the corporation could have "ratified" the payment by not objecting, such ratification would not be binding on the trustee in bankruptcy.

■ Section 70(c) of the Bankruptcy Act (11 U.S.C. § 110(c)) grants to the trustee the status of a lien creditor as of the date of bankruptcy. One of the purposes was to prevent the trustee from being subjected to the defenses of ratification and estoppel that could be raised against the bankrupt. As stated in Vol. 4A, Collier on Bankruptcy, 14th Ed. § 70.45, "More frequently than otherwise, the bankrupt will be estopped to deny the validity of his acts, obligations and transfers. If this estoppel is imputed to the trustee, he may be helpless to avoid or set aside the results of the bankrupt's chicanery, the favoritism of certain creditors, or other acts or transfers that are in derogation of the Bankruptcy Act's paramount purpose: equality of distribution among all creditors. * * * [T]he trustee has been given extensive powers to set aside preferential or fraudulent transfers, or transfers otherwise voidable under applicable state or federal law where the bankrupt would be estopped to do so, and these powers will, in many cases, be ample to achieve the results desired. Where, however, the transfer, lien, or encumbrance in question is invulnerable to assault under these provisions, the trustee would be sorely handicapped if he were not accorded some superior status, attaching as of the date of bankruptcy, that would enable him to challenge the validity of such transactions. This then is the purpose of the second sentence of § 70c. It has been justly and characteristically termed the 'strong-arm clause'; * * *."

Assuming that it could be said in an action by the Company that by acquiescence it had ratified the act of Mrs. Catlett in paying the personal note of Mr. Crites with corporate funds, such ratification was not binding on the trustee when it resulted in a misappropriation of funds which should have been available for the benefit of the creditors of the bankrupt. We find no merit to appellant's claim of ratification.

Appellant next asserts that it "took Crites and Sailer's corporate check for value, in good faith and had no knowledge that the officer [Mrs. Catlett] of Crites and Sailer [in] paying off said obligation of another officer/shareholder [Mr. Crites] did not have corporate authority to pay off said note."

In its petition the trustee pleaded that after Mrs. Catlett deposited the check from the Housing Authority to the account of the Company, the Bank, acting through Mr.

Randol, presented to her "a number of notes payable to [the Bank] which [it] represented as being valid obligations of [the Company] on which the sum of [$45,585.42] was owing, and demanded of said Dorothy Catlett that the said amount * * * be paid and presented to her a check on the account of [the Company] at * * * [the] bank prepared by [the Bank] and payable to [the Bank]," and that Dorothy Catlett, "believing that all of the notes so presented to her were valid obligations of [the Company], signed said check as treasurer of [the Company], which check defendant immediately paid from the account of [the Company]."

Mr. Randol knew that the $10,000 note was a personal obligation of Mr. Crites and not that of the Company. He also knew, or will be held to know, that ordinarily personal obligations of a corporate officer are not to be paid with corporate funds. The evidence authorized a finding that Mrs. Catlett knew the Bank had notes, other than the $35,000 note, evidencing corporate obligations, but that she did not know of the existence of the personal note. The evidence also authorized a finding that the $10,000 personal note was placed with the corporate notes and represented to her in such a way that she reasonably assumed it was a corporate obligation, and that Mr. Randol selected it for payment with corporate funds. It is true that Mr. Randol testified that Mrs. Catlett selected the personal note for payment, but this was an issue of fact, and in the absence of specific findings of fact we deem the trier of fact found this issue in accordance with the judgment. Under these circumstances it cannot be said that the Bank received the check "in good faith" without notice that the corporation would have a defense to its payment, and therefore it could not be and was not a holder in due course. § 400.3–202 RSMo 1969; *Mid-Continent National Bank v. Bank of Independence*, supra.

Appellant does not contend that under the facts pleaded, and which the trier of fact could reasonably have found to exist and which under the circumstances we

deem it did so find, the trustee was not entitled to recover the corporate funds used without authority to pay a personal obligation of Mr. Crites. See generally, 66 Am. Jur.2d Restitution and Implied Contracts § 13; Restatement of the Law of Restitution § 15 et seq.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.