**In re Sergio VELIKOPOLJSKI and Teresa Velikopoljski, Debtors.**

**Sergio VELIKOPOLJSKI and Teresa Velikopoljski, Plaintiffs,**

**v.**

**FLORIDA NATIONAL BANK and Intercontinental Bank, Defendants.**

**Bankruptcy No. 84–02386–BKC–SMW. Adv. No. 85–1043–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Nov. 4, 1985.

Lawrence A. Gordich, Holland & Knight, Miami, Fla., for debtors.

Laurel Isicoff, Squires Sanders & Dempsey, Miami, Fla., for Florida Nat. Bank.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This Cause having come before the Court upon a complaint to avoid a lien pursuant to Bankruptcy Code Section 544 and to determine the extent, validity and priority of liens, if any, filed by the Debtors in Possession ("Debtors") and a counterclaim filed by FLORIDA NATIONAL BANK ("FNB"), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witness, considered the arguments, stipulations and representations of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

■ The Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to *28 U.S.C. §§ 157 and 1334* and the Order of Automatic Reference of bankruptcy proceedings to the bankruptcy court effective in the United States District Court, Southern District of Florida. This matter is a core proceeding pursuant to *28 U.S.C. § 157(b)(1), (2)* since the subject matter of the controversy, a United States documented vessel, or the proceeds from the sale thereof, were at all times material to these proceedings in the possession and jurisdiction of this Court.

The record in this case establishes that on March 7, 1982 the Plaintiff Debtors/Debtors in Possession acquired title to a forty-one foot Striker yacht, at that time known as "THE SWORD" ("the Vessel"). Shortly after the acquisition of the Vessel, the Debtors negotiated a loan from the Defendant, INTERCONTINENTAL BANK ("INTERCONTINENTAL"). Said loan transaction was completed on or before September 24, 1982 and INTERCONTINENTAL acquired a lien on the Vessel which was subsequently satisfied.

The Defendant INTERCONTINENTAL was properly served, but did not answer the adversary complaint, it did not respond to the Plaintiffs' request for discovery, nor did it appear and participate in the trial of the issues. Accordingly, the documentary evidence involved in the INTERCONTINENTAL loan transaction, admitted at the

trial, and the factual allegations contained in the adversary complaint as they refer to INTERCONTINENTAL, are accepted by the Court as true and correct.

On September 24, 1982 the Vessel was documented in accordance with the applicable federal statutes, and the Department of Transportation (United States Coast Guard, an agency of the United States of America) issued United States Certificate of Documentation No. 649016. The Defendant FNB did not object to the admission of said Certificate of Documentation as an exhibit and, in fact, admitted that the Vessel was a documented vessel of the United States.

On or about May 14, 1984 and June 11, 1984, the Defendant FNB made loans to the Debtors in the respective amounts of $200,000.00 and $50,000.00. In that regard, the parties executed notes and mortgages and FNB recorded the mortgages pursuant to *F.S.A. § 328.15.* Prior to finalization of said loan transactions, the Debtors furnished FNB with copies of all of the Vessel's documents, including but not limited to the Certificate of Documentation No. 649016.

The Debtors' payment of the INTERCONTINENTAL loan was a separate and distinct transaction and was not related to the Debtors' borrowings from FNB. No part of the proceeds of the FNB loans to the Debtors were utilized to pay and discharge the INTERCONTINENTAL indebtedness.

At no time prior to the commencement of this proceeding did FNB perfect its claim of mortgage on the Vessel by recording the same on the Certificate of Documentation for the Vessel, nor did FNB register its mortgage lien in accordance with the applicable federal statutes (*46 U.S.C. § 911, et seq.*; the Ship Mortgage Act was originally enacted in 1920 and has been amended from time to time ("The Ship Mortgage Act")).

On December 14, 1984 the Debtors filed their voluntary petitions under Chapter 11, Title 11 U.S.C., and on June 10, 1985, with court approval, the Debtors sold the Vessel free and clear of liens to a third party. Lien rights, if any, were preserved and attached to the sale proceeds (*11 U.S.C. § 363*).

The Court finds that as of September 24, 1982, more than two years prior to the commencement of the above-styled Chapter 11 case, the Vessel was a documented vessel of the United States and remained such as of the time of the commencement of this proceeding and all times subsequent thereto. As a Vessel of the United States, the provisions of The Ship Mortgage Act govern the manner and mode of encumbering the Vessel, and provide in part:

> (4) The term "Vessel of the United States" means any vessel documented under the laws of the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the Secretary of Transportation ...

*46 U.S.C. § 911(4).*

■ The Vessel could only be sold, conveyed or mortgaged in accordance with the laws of the United States, including but not limited to *46 U.S.C. § 921*, which provides:

### SALE, CONVEYANCE, OR MORTGAGE OF VESSEL OF UNITED STATES; RECORD

(a) No sale, conveyance, or mortgage which, at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States, or any portion thereof, as the whole or any part of the property sold, conveyed, or mortgaged *shall be valid, in respect to such vessel*, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof,[1] *un-*

---

**1.** In accordance with Bankruptcy Code Section 1107, the instant Complaint is brought by the Debtors on behalf of the creditors of the estate and is not brought by a "grantor or mortgagor, his heir or devisee" or a "person having actual

notice." A debtor in possession is an entity distinct from the debtor and has all the rights and powers of a trustee in bankruptcy irrespective of any notice to or knowledge of the debtor. *In re General Coffee Corp.*, 32 B.R. 23 (Bkrtcy.S.

til such bill of sale, conveyance, or mortgage is recorded in the office of the Collector of Customs[2] of the port of documentation of such vessel, as provided in subsection (b) of this section. [emphasis added]

(b) Such Collector of Customs shall record bills of sale, conveyances, and mortgages delivered to him, in the order of their reception, in books to be kept for that purpose and indexed to show.

(1) The name of the vessel;

(2) The names of the parties to the sale, conveyance, or mortgage;

(3) The time and date of reception of the instrument;

(4) The interest in the vessel so sold, conveyed, or mortgaged; and

(5) The amount and date of maturity of the mortgage.

*46 U.S.C. § 921.*

In contrast, the promissory notes and mortgages recorded under *F.S.A. § 328.15,* upon which FNB claims a perfected secured position, were executed sometime in May and June of 1984, approximately two years after the Vessel became a documented vessel of the United States.

Further, at the time of the execution of the FNB promissory notes and mortgages, FNB had actual knowledge that the collateral offered as security for the loans was to be a mortgage on a documented United States vessel; yet it failed to comply with the applicable provisions of The Ship Mortgage Act.[3]

The applicable statute, in addition to other requirements, provides:

### RECORD AT HOME PORT

No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry) which includes a vessel of the United States or any portion thereof *shall be valid in respect to such vessel* against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, *until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the Collector of Customs at the home port of such vessel.* Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document. [emphasis added]

*46 U.S.C. § 1012. See also 46 U.S.C. §§ 911, 921.*

In reaching a determination in the instant case, the Debtors urge the Court to apply the aforesaid federal statutes while FNB contends that the applicable portions of the Florida statutes are controlling. The Court finds that the federal statutes are applicable.

■ Under the Constitution of the United States, Congress has the exclusive power to regulate commerce with foreign nations and among the several states. *U.S. Const. Art. I, § 8.* Under this grant of authority, Congress has enacted methods and procedures to enroll, document and encumber vessels of the United States (*46 U.S.C. § 911 et seq.*). This legislation has usurped the entire field and leaves no room for interference by state statutes.

---

D.Fla.1983); *In re Brent Explorations, Inc.,* 31 B.R. 745 (Bkrtcy.D.Col.1983); *In the Matter of Munzenreider Corp.,* 34 B.R. 82 (Bkrtcy.M.D.Fla. 1983); *Frye v. Farmers and Merchant's Bank of Cape,* 561 S.W.2d 392 (Mo.App.1978); *In re I.A. Durbin, Inc.,* 46 B.R. 595 (Bkrtcy.S.D.Fla.1985); *Arnold, et al. v. Eastin's Trustee,* 116 Ky. 686, 76 S.W. 855 (1903); *In Re Penglase Sand & Gravel Co.,* 76 F.2d 593 (7th Cir.1935).

**2.** In 1967 certain functions of the Department of Commerce were transferred to the Department of Transportation. Additionally, under the act establishing the Department of Transportation, the Secretary of Transportation, acting through the United States Coast Guard, currently has the responsibility for recording bills of sale, transfers and mortgages of ships and for issuing new marine documents.

**3.** FNB's promissory notes and mortgages describe the Debtors' Vessel as a documented United States Vessel (No. 649016), confirming the Debtor's testimony that prior to execution of said notes and mortgages, FNB was aware that the Vessel was in fact a United States documented Vessel, subject to the provisions of *46 U.S.C. § 911, et seq.*

The Court now turns its attention to the effect of the aforesaid federal statutes in light of the applicable provisions of the Bankruptcy Code. The Plaintiffs as Debtors in Possession are armed with all the powers of a bankruptcy trustee (*11 U.S.C. § 1107(a)*). Section 544(a) of the Code, which arms the Debtors in Possession with those rights and powers of avoidance, is usually referred to as the "strong arm clause." Said section provides in part:

Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the *rights and powers of, or may avoid* any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—[emphasis added]

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, *a judicial lien* [4] on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [emphasis added]

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time with respect to such credit, *an execution against the debtor that is returned unsatisfied* at such time, whether or not such a creditor exists ... [emphasis added]

*11 U.S.C. § 544(a).*

Therefore, Debtors-in-Possession are vested with the rights and powers of a hypothetical creditor with a perfected judicial lien on all property of the Debtors and with an execution against the Debtors that is returned unsatisfied as of the date of filing the Chapter 11 petition. Such avoidance powers can affect any transfer, including but not limited to a mortgage or a security interest (*11 U.S.C. § 101(48)*).

In addition, a Debtor in Possession has the avoiding powers enumerated in Section 544(b) of the Code, i.e., the right to declare any transfer void under applicable federal or state law. *See also* 4 *Collier on Bankruptcy,* ¶ 544.01 (15th Ed.1985). Section 544(b) provides:

(b) The trustee *may avoid any transfer of an interest of the debtor in property* or any obligation incurred by the debtor *that is voidable under applicable law* by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title. [emphasis added]

(*11 U.S.C. § 544(b)*).

FNB seeks comfort in relying upon this Court's authored opinions in *In re Belize Airways Ltd.,* 19 B.R. 840 (Bkrtcy.S.D.Fla. 1982); *In re Gefen,* 35 B.R. 368 (Bkrtcy.S. D.Fla.1984) for the proposition that only state law applies in connection with the avoidance provisions of Section 544.

■ The Court finds that FNB has misinterpreted the impact of said cases in accordance with the provisions of Section 544. In *Belize* and *Gefen* the facts and issues involved were governed by applicable state law in accordance with the circumstances and issues presented therein. Where state law is involved to the exclusion of federal law, the court must look to state law. However, where the federal law excludes the state law, the court must apply federal law. *Collier* recognizes this edict:

[i]n all but a small proportion of bankruptcies the law of reference in the application of such provisions as section 544(a) is state law. Collier here and elsewhere generally uses the more emphatic and less awkward term in place of the more comprehensive reference to nonbankruptcy law. It is to be understood that if but for bankruptcy the law of the District of Columbia or of a territory, *or some federal nonbankruptcy statute, would govern the situation, state law is*

---

**4.** Bankruptcy Code Section 101(30) states, "judicial lien means lien obtained by judgment, levy,

sequestration, or other legal or equitable process or proceeding."

used herein with the intention of including this kind of federal law.... [emphasis added]

*4 Collier on Bankruptcy*, ¶ 544.02 (15th Ed.1985) at 544–5. *See also United States v. Eiland*, 223 F.2d 118 (4th Cir.1955); *Perkins v. Emerson*, 59 Me. 319 (1871).

■ At all times relevant to these proceedings, the Vessel in question was a documented Vessel of the United States, governed by and subject to the provisions of *46 U.S.C. §§ 911, et seq.* Accordingly, the Debtors' hypothetical rights and powers of avoidance are superior to any rights that FNB may have in the Vessel.

In a long line of cases which concern the issue now before the Court, state courts have consistently held that a sale, conveyance or mortgage, in connection with a vessel of the United States, is not valid unless recorded in compliance with the applicable federal statutes.

The Supreme Court of New York in the case of *Ellis, et al. v. Rickett*, 164 NYS 243 (App.Div.1917) addressed the issue of whether a mortgage on a vessel of the United States is valid against a creditor with a writ of execution where the mortgage is recorded in compliance with state law but is not recorded in accordance with Section 4192 of the Revised Statutes of the United States (Comp.St.1913 § 7778 ("United States Revised Statutes")).[5] That court specifically held that an unrecorded mortgage is void and invalid as to a creditor with a writ of execution. *Id.* at 245. *See also Foster v. Chamberlain & Co.*, 41 Ala. 158 (1867).

A Kentucky court considered whether a mortgage and bill of sale involving a United States Vessel, not recorded in accordance with United States Revised Statutes § 4192, were void against a trustee in bankruptcy or against creditors of a bankrupt estate. The Kentucky court held that the purported mortgage and bill of sale, not being in compliance with United States law, were void and invalid against the bankruptcy trustee and the creditors of the estate. The court held:

> Consequently any bill of sale transferring her title, or any mortgage creating a lien upon her, save by way of bottomry, was of necessity recordable in the office of the collector of customs at that port before it could affect others than the parties to such transfers and those having actual notice of it. *The recording of the mortgage elsewhere was as ineffectual as if it had not been recorded at all....* Therefore the recording of Baskett's mortgage in Henderson County court clerk's office of Kentucky did not create a lien upon the boat as against the creditors of her owner, *Eastin; nor, for obvious reasons, could the recording of the mortgage in the surveyor's office on April 1, 1901, affect antecedent creditors. [emphasis added]*

*Arnold, et al. v. Eastin's Trustee*, 116 Ky. 686, 76 S.W. 855 at 857 (1903).

A Maine court clarified the interrelationship between state and federal law and the applicability of federal law where the validity of ship mortgages on vessels of the United States are involved:

> Before registry or enrollment a vessel, like any other article of personal property, is subject to the laws of the state. After registry or enrollment it comes under the operation of the laws of the United States. *Before the vessel is registered or enrolled, a mortgage of it will be valid if recorded agreeably to the laws of the State. After it is registered or enrolled, a mortgage of it will not be valid unless recorded as required by the laws of the United States. To hold otherwise, would go far*

---

**5.** Section 4192 was one of the predecessors of, and identical in every material respect to, Sections 911, 921 and 1012 of Title 46 of the United States Code. Section 4192 provided:

"No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled."

*to defeat the very object which the registry laws of the United States were intended to secure.* [emphasis added]

*Perkins v. Emerson,* 59 Me. 319 at 320 (1871).

A California District Court made the same determination and reached the same conclusion. *Atlas Imperial Diesel Engine Co. v. Criscuolo,* 32 Cal.App.2d 244, 89 P.2d 674 (1939). The *Atlas* court concluded that the relevant provisions of the present Ship Mortgage Act are the exact replica of the applicable provisions of Section 4192 of the Revised Statutes of the United States dealing with the same subject. In accepting the *Perkins* decision, the *Atlas* court concluded:

> [e]nrollment of a vessel pursuant to section 1012, 46 U.S.C.A., has the effect of nullifying all purported encumbrances executed prior to such enrollment except as provided in said section.

*Id.* at 678.

It is well recognized that a judgment creditor armed with an execution possesses the right to challenge the validity of any prior recorded mortgage where vessels of the United States are involved. *The Vigilancia,* 73 F. 452 (2nd Cir.1896), *see also The Gordon Campbell,* 131 F. 963 (W.D.N.Y.1904).

In an analogous case to the case at bar, where an interest in a United States Vessel was not perfected in accordance with The Ship Mortgage Act, the Seventh Circuit Court of Appeals held:

> Some time before the date of the transfer of title to the Wolverine from Dunlap to appellant, it became a "vessel of the United States." The transfer from Dunlap to appellant was, by the laws of the United States (46 U.S.C. § 1012), invalid

against any person other than the grantor, his heirs, or devisees, or persons having actual notice thereof, until it was recorded in the office of the Collector of Customs at the home port of the vessel.

*In re Penglase Sand & Gravel Co.,* 76 F.2d 593, 596 (7th Cir.1935).

The *Penglase* opinion recognizes that a trustee in bankruptcy has powers to avoid transfers made in contravention of federal law or transfers that fail to comply with federal law. The *Penglase* court observed:

> While it may be argued that a conditional sales contract is not a mortgage or bill of sale certainly the very purpose for which the statute pertaining to maritime property was enacted would be violated if no demands could attach as against a secret lien of this nature ... *Under this law and under any reasonable construction of this United States Statute would it not have been possible for any judgment creditor, prior to bankruptcy, to have effectively levied on this vessel under proper execution for any obligation of the Penglase Sand and Gravel Company? If such is the case, the trustee has exactly the same right. He takes his title as a judgment creditor armed with execution, and the lien insisted upon by and in the reclamation petition filed in this cause is of no avail as to third parties without notice under the statute, it is the opinion of the referee that such claim may be successfully resisted by the trustee in bankruptcy.* [emphasis added]

*Penglase, supra,* at 596.[6] *See also McCorkle v. First Pennsylvania Banking & Trust Co.,* 321 F.Supp. 149 (Maryland 1970).[7]

The issues and facts in the present case are not affected by the provisions of the

---

6. In the *Penglase* case the court specifically considered whether a seller's assignment of a conditional sales contract for the purchase of a ship which is enrolled as a vessel of the United States is valid as against a trustee in bankruptcy, however, the court analogized a conditional sales contract to a mortgage and applied 46 U.S.C. § 1012. Accordingly, the court's ruling controls the issue presented in the case at bar.

7. The decision rendered in the *McCorkle* case was reversed on other grounds, however, the *McCorkle* court and the appellate court specifically agreed that a mortgage on a vessel of the United States is not valid as against certain entities unless it is recorded in accordance with *46 U.S.C. §§ 911, et seq. McCorkle v. First Pennsylvania Banking and Trust Co.,* 459 F.2d 243 (4th Cir.1972).

Bankruptcy Code which limit a trustee's [debtor in possession's] avoiding powers. In a yet to be published opinion, *In re WWG Industries, Inc.*, No. 85–8515, September 30, 1985, the United States Court of Appeals for the Eleventh Circuit [772 F.2d 810] considered the limitations on the trustee's avoiding powers as they are affected by the "related back theory," i.e., where a perfected lien relates back to the time that the lienor obtained a valid lien in accordance with applicable law. The facts in *WWG* are not at all analogous to the facts in the present case. The Eleventh Circuit dealt with the issue of perfection of a security interest under applicable state statutes and concluded that in view of the perfected state lien, the perfection of the lienor's lien related back to the time the lienor first commenced work on the chattels involved. In the instant case, the "related back theory" is not applicable simply because FNB did not perfect its mortgage on a United States Vessel in accordance with applicable law, and the facts and applicable law do not support application of the related back theory to the satisfied perfected INTERCONTINENTAL lien. Moreover, the record is devoid of any facts which would support any claim of FNB to INTERCONTINENTAL's perfected state lien and the law prohibits it.

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court holds that the Debtors' interest in the Vessel and in the proceeds from the sale thereof is superior to the claims of FNB and INTERCONTINENTAL and FNB's asserted mortgage and claim on the Vessel and the proceeds from the sale thereof are avoided.

A Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.