**Geraldine Edens SMITH et al., Plaintiffs,**

v.

**SMITH, BARNEY, HARRIS, UPHAM & CO., INC., et al., Defendants.**

**Civ. A. No. 80–0590–CV–W–2.**

United States District Court, W. D. Missouri, W. D.

Jan. 16, 1981.

---

Ronald C. Spradley, Spradley & Wirken, Kansas City, Mo., for plaintiffs.

Daniel M. Dibble, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for defendant, Smith, Barney, Harris, Upham & Co., Inc.

Gordon R. Gaebler, Svoboda & Gaebler P. C., Kansas City, Mo., for defendants F. Stuart and Alice Barnes.

Stephen G. Scholl, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for defendants Bernard W. and A. J. Balow.

Bill E. Bracey, Jr., Davis, Bracey & Heuer, Springdale, Ark., for defendant Beryl Beckman.

## ORDER DENYING MOTIONS TO DISMISS

### INTRODUCTION

COLLINSON, Senior District Judge.

This matter pends before the Court upon various defendants' Motions to Dismiss. Plaintiffs are partners in the partnership "Glen Arbor Projects" and have named as defendants, Smith, Barney, Harris, Upham & Company, Inc. (hereinafter referred to as "Smith, Barney") and all other persons who were members of the partnership during the time period involved in this action and who declined to join as plaintiffs.

Defendant Smith, Barney is a securities brokerage firm. Plaintiffs complaint alleges that on or about May 20, 1960, defendant Smith, Barney entered into an agreement under which defendant F. Stuart Barnes opened cash and margin accounts with defendant Smith, Barney under a fictitious name "Glen Arbor Projects," and F. Stuart Barnes executed an agreement purporting to be the sole owner of Glen Arbor Projects. The complaint further alleges that thereafter and prior to 1965, Glen Arbor Projects became the name of a partnership which was an investment club for which F. Stuart Barnes acted as the managing partner.

Plaintiffs allege that F. Stuart Barnes, as managing partner, made unauthorized transactions in behalf of the partnership and maintained an unauthorized margin account with defendant Smith, Barney (¶ 11, 19). Plaintiffs further allege that after Glen Arbor Projects became a partnership, they informed defendant Smith, Barney that the Glen Arbor Projects account was no longer the account of an individual but one of a partnership (¶ 9, 19, 31), but that defendant Smith, Barney continued to transact business on a margin account basis without making any inquiry as to F. Stuart Barnes' authority to make such transactions (¶ 10, 20, 33).

Count I of plaintiffs' complaint sets out a claim against Smith, Barney for damages sustained by plaintiffs as a result of defendants' continual failure to comply with Rule 405 of the New York Stock Exchange (NYSE). Rule 405 requires all brokers to use due diligence to learn essential facts relative to every customer, every order and every cash or margin account. The Rule requires brokers who are members of the New York Stock Exchange to, in effect, "know their customer." [1] Counts II and III

---

1. New York Stock Exchange Rule 405 is popularly known as the "know your customer" rule. It provides in part:

   Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to

of plaintiffs' complaint allege the common law torts of conversion and negligence, respectively.

On August 11, 1980, defendant Beryl Lee Beckman, a member of the Glen Arbor Projects partnership, filed her motion to dismiss. One day later, defendants F. Stuart and Alice Barnes filed their motion to dismiss. On September 19, 1980, defendant, Smith, Barney moved that plaintiffs' complaint be dismissed and stated seven grounds therefor. The Court will first address the motions of the individual defendants.

### INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS

Defendants Beryl Lee Beckman, F. Stuart Barnes and Alice Barnes move to dismiss on the grounds that they are merely nominal parties and plaintiffs' complaint seeks no relief against them individually. While no relief is specifically sought against these individual defendants, they are proper parties to this action and this Court has jurisdiction over them as they are parties necessary for a just adjudication of plaintiffs' claims. The cause of action against Smith, Barney is in favor of the partnership Glen Arbor Projects and therefore all partners of the partnership at the time of the transactions are necessary and indispensable parties to any action brought to enforce any claim of the partnership. *See,* for example, *Harrell Sumner Contracting Co., Inc. v. Peabody Peterson Co.,* 546 F.2d 1227, 1229 (5th Cir. 1977); *Bry-Man's, Inc. v. Stute,* 312 F.2d 585, 587 (5th Cir. 1963); *Rosen v. Texas Co.,* 161 F.Supp. 55 (S.D.N.Y.1958); *Charne v. Essex Chair Co.,* 92 F.Supp. 164 (D.C.N.J.1950).

Additionally, Rule 19(a) of the Federal Rules of Civil Procedure states:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

All partners of Glen Arbor Projects during the period of time which defendant Smith, Barney handled the Glen Arbor Projects account are parties needed for a just adjudication and are parties who will not deprive the Court of jurisdiction of this matter. Failure to join all parties could subject defendant Smith, Barney to multiple liability should all parties not be made a party to this action.

Based upon the authorities cited, *supra,* and Rule 19(a) of the Federal Rules of Civil Procedure, it is the opinion of this Court that all partners of the partnership at the time of the transaction complained of are necessary and indispensable parties. Accordingly, defendants Beckman, F. Stuart and Alice Barnes' motions to dismiss are denied.

---

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

(2) Supervise diligently all accounts handled by registered representatives of the organization.

## DEFENDANT SMITH, BARNEY'S MOTION TO DISMISS

On September 19, 1980, defendant Smith, Barney moved for an order dismissing plaintiffs' complaint on the grounds that (1) Count I states no actionable claim for relief because Rule 405 of the New York Stock Exchange does not give rise to a private cause of action for damages by the plaintiffs; (2) Counts II and III are unsupported by any independent jurisdictional basis and this Court should decline to exercise pendent jurisdiction over the claims advanced therein; (3) Count II states no actual claim for conversion under Missouri law; (4) Count III states no actionable claim for negligence or other breach of duty under Missouri law; (5) the matters pleaded in Counts II and III are *res judicata* and should be dismissed in view of the dismissal in the case of *Geraldine Smith, et al. v. F. Stuart Barnes, et al.*, Case No. CV77–0043, in the Circuit Court of Jackson County, Missouri; (6) plaintiffs' claims for relief are barred by the pertinent five-year statutes of limitations, RSMo. Sections 516.120 and 516.100; and (7) prosecution of plaintiffs' claims under Counts I, II, and III are barred because an accounting and settlement between the copartners of Glen Arbor Projects is a condition precedent to the instant action for damages against the defendant.

Before addressing the merits of defendants' motion, the Court chooses to set out the standards which bind the Court when considering a motion to dismiss. For purposes of a motion to dismiss under the Federal Rules of Civil Procedure, the well pleaded material allegations of the complaint are taken as admitted. *Springfield Television, Inc. v. City of Springfield, Missouri*, 428 F.2d 1375 (8th Cir. 1970); *Seven-Up Bottling Company v. Seven-Up Company*, 420 F.Supp. 1246 (E.D.Mo.1976), *aff'd* 561 F.2d 1275 (8th Cir. 1977). The complaint, moreover is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

It is well settled that a complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (emphasis added); *Thomason v. Hospital TV Rentals, Inc.*, 272 F.2d 263 (8th Cir. 1959). In *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1975), the Court stated:

> [A]s a practical matter dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

With these standards in mind, the Court chooses to address defendant Smith, Barney's contentions in the order in which they were presented.

### New York Stock Exchange Rule 405

The question of whether a violation of a New York Stock Exchange or National Association of Security Dealers (NASD) rule, required or promulgated by federal law, gives rise to a private right of action in favor of the customer damaged as a result of the violation is a "troublesome one." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129 (8th Cir. 1979), citing *Shull v. Dain, Calman & Quail, Inc.*, 561 F.2d 152, 160 (8th Cir. 1977). The Second Circuit in *Colonial Realty v. Bache & Co.*, 358 F.2d 178 (2nd Cir. 1966), indicated that in considering the question of whether violation of a private stock exchange rule creates a private right of action, one must look to the nature of the particular rule and its place in the regulatory scheme. The court further stated that a case for creation of a private right of action would be strongest when the rule set forth a duty unknown at common law. *Id.* at 181–83.

■ Applying these comparable principles, the courts have accepted the proposition that, under the appropriate circum-

stances, violations of exchange rules designed for investor protection may give rise to a private cause of action. See, *Rolf v. Blyth Eastman Dillon & Co., Inc.*, 424 F.Supp. 1021, 1040 (S.D.N.Y.1977), citing *Ocrant v. Dean Witter & Co.*, 502 F.2d 854, 858 (10th Cir. 1974); *Avern Trust v. Clarke*, 415 F.2d 1238, 1242 (7th Cir. 1969), cert. denied 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed.2d 255 (1970); *Buttrey v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 410 F.2d 135, 141 (7th Cir. 1969), cert. denied 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969) (NYSE Rule 405 held actionable).

Using the analysis espoused by the Second Circuit in *Colonial Realty v. Bache & Co.*, supra, the court in *Rolf v. Blyth Eastman Dillon, Co., Inc.*, supra, concluded:

> ... That NYSE rule 405 and Article III, Section 2 of the NASD rules are sufficiently precise to sustain a cause of action. Further, there can be no doubt that the purpose of these rules is to protect the investor. Finally, since particularly in this action the duties imposed on the defendants may be unknown at common law, see *Carroll v. Doolittle*, [21 Misc.2d 203, 191 N.Y.S.2d 398 (1959)], the court concludes that this action presents a strong case for the implication of a civil right of action under the NYSE and NASD rules.

*Id.*, at 1041.

While the parties have not cited, and the Court is unaware of, authority which holds a broker liable solely for violation of NYSE or NASD rules, a series of decisions have accepted the proposition that such liability may lie under certain circumstances. In particular, the Courts have found a private right of action for violation of exchange or dealer association rules when there is an accompanying finding "tantamount to fraud." *See* example, *Shull v. Dain, Calman, & Quail, Inc.*, supra, at 160; *Lincoln Commodity Services v. Meade*, 558 F.2d 469, 471, n. 1 (8th Cir. 1977); *Carras v. Burns*, 516 F.2d 251, 260 (4th Cir. 1975); *Evans v. Kerbs and Co.*, 411 F.Supp. 616, 624 (S.D.N.Y.1976); *Architectural League v. Bartos*, 404 F.Supp. 304, 314 (S.D.N.Y.1975).

The courts which have considered the question have followed the rationale that any definition of what is actionable under NYSE Rule 405 should be narrowly drawn, because Rule 10b–5 and 15cl–2 of the Exchange Act are directed essentially at fraud. *See*, example, *id; Hecht v. Harris Upham & Co.*, 283 F.Supp. 417, 430 (N.D. Cal.1968), *modified on other grounds* 430 F.2d 1202 (9th Cir. 1970). "Indeed, each court that has considered the question has concluded that mere negligent violations of the NYSE or NASD rules are not actionable in federal court; rather, to form the basis for liability and damages, the brokers violations of rules must be 'tantamount to fraud.' " *Rolf v. Blyth Eastman Dillon & Co., Inc.*, supra, at 1041, citing *Buttrey v. Merrill Lynch*, supra, at 143; *Bell v. J. D. Winer & Co.*, 392 F.Supp. 646 (S.D.N.Y. 1975); *Geyer v. Paine Webber Jackson & Curtis, Inc.*, 389 F.Supp. 678 (D.Wyo.1975) (mere negligence insufficient); *Wells v. Blythe & Co.*, 351 F.Supp. 999, 1001 (N.D. Cal.1973) (rules violations not "per se" actionable); *McCurnin v. Kohlmeyer & Co.*, 347 F.Supp. 573 (E.D.La.1972) (plaintiff must prove at least a knowing and callous disregard for the rule).

■ Accordingly, it is this Court's opinion that the reasoning in *Rolf v. Blyth Eastman Dillon & Co., Inc.*, supra, is sound. Furthermore, this Court is bound by decisional law of this Circuit to hold that a private plaintiff may assert a cause of action for violation of NYSE Rule 405 and may prevail upon such a claim if he proves that the actions of the defendants constitute violation of the applicable rules "tantamount to fraud." *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Goldman*, 593 F.2d 129 (8th Cir. 1979).

In the *Rolf* case, supra, the brokerage registered representative admitted "that he never knew plaintiff's investment intent, and that he had no idea what type of investor his customer was" when he recommended an investment adviser to plaintiff. *Id.*, at 1042. The court noted "[t]hese admissions alone could suffice to form the basis of violation of NYSE Rule 405(1) tan-

tamount to fraud." *Id.* Indeed plaintiff makes similar allegations here in that he claims defendant Smith, Barney failed to know Glen Arbor Projects' investment intent to discontinue the margin account and that defendant Smith, Barney had no idea what type of investor his customer was when it dealt with plaintiffs as an individual rather than as a partnership. Thus, under the *Rolf* court analysis, these allegations alone "could suffice to form the basis of a violation of NYSE Rule 405(1) tantamount to fraud."

█ It is also this Court's opinion that the *Rolf* court correctly stated that such a standard requires that the violations of the applicable rule operate as a fraud upon the plaintiff and that defendants acted with scienter. Scienter is acting with "intent to defraud or with willful and reckless disregard for the truth or falsity of their representations or of whether their actions constitute a fraud." *Rolf v. Blyth Eastman Dillon & Co., Inc., supra,* at 1041, citing *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2nd Cir. en banc 1973); *Arthur Lipper Corp. v. SEC,* 547 F.2d 171 (2nd Cir. 1976). Indeed the plaintiffs have made such allegations in Count I. Paragraph 12 of Count I alleges that defendants acts in violation of NYSE Rule 405 were made with "reckless disregard and conscious indifference." Similar allegations are repeated in paragraph 13.

After consideration of the plaintiffs' allegations in Count I and in view of the standards guiding the Court, it does not appear "beyond doubt that the plaintiff can prove no set of facts" tantamount to fraud. Therefore, Count I of plaintiffs' complaint, when liberally construed in favor of plaintiffs, may state a private cause of action under NYSE Rule 405 and accordingly motion to dismiss is denied.

### Jurisdiction of Counts II and III

█ As its second grounds for a motion to dismiss, defendants contend that Counts II and III, asserting conversion and negligence, respectively, are unsupported by any independent federal jurisdiction and the Court should decline to exercise pendent jurisdiction over said claims. Jurisdiction over Count I is in the federal court under 15 U.S.C. §§ 78aa and 78f and a and 28 U.S.C. § 1331(a). Plaintiffs claim that under the doctrine of pendent jurisdiction, the Court should exercise jurisdiction over the state causes of action alleged in Counts II and III.

Pendent jurisdiction of a state claim exists whenever the state and federal claims "derive from a common nucleus of operative facts" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Plaintiffs claim that the state causes of action in Counts II and III and the federal cause of action in Count I derive from a common nucleus of operative facts—the conduct of defendant Smith, Barney in opening, maintaining and conducting transactions through an unauthorized margin securities account. There were allegedly substantial losses through the unauthorized transactions of the margin account and defendant Smith, Barney allegedly received substantial sums for said unauthorized services. All three Counts are based on these facts.

The Court therefore chooses to exercise pendent jurisdiction over the claims in Counts II and III because they are derived from a "common nucleus of operative fact" on which the federal claim under Count I is based and the claims of plaintiffs under all three Counts are such that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." Accordingly, defendants' motion to dismiss Counts II and III for lack of jurisdiction is denied.

### Count II Conversion

Defendant Smith, Barney also moves to dismiss Count II of plaintiffs' complaint on the grounds that it does not state an actionable claim for conversion under Missouri law. Defendant Smith, Barney bases its position on two points: (1) that plaintiffs' complaint fails to make the necessary allegations of the plaintiffs' "right to immedi-

ate possession" of the property which is the subject of the conversion, and; (2) that there can be no conversion when plaintiffs have no right to an immediate possession of the allegedly converted property.

As to defendants' first contention, the Court notes that paragraph 22 of Count II alleges "plaintiffs and other members of the partnership are the owners of, and have property rights in, the *immediate right to possession* of the funds in the hands of defendant [Smith, Barney] received from the sale of securities of the partnership Glen Arbor Projects . . ." (emphasis added). Thus, even assuming that defendants' contention that plaintiffs must plead a right to immediate possession is true, it is facially apparent that plaintiffs have made such an allegation.

■ As to defendants' second contention that plaintiffs did not have a right to immediate possession, it is the Court's opinion, as expressed *supra*, that because there are sufficient allegations of a right to immediate possession, the complaint states a cause of action. The facts which must be proven to support the claim are to be presented at trial as a question of fact for the factfinder and are not a proper inquiry when addressing a motion to dismiss. *See discussion, supra*, at p. 1384. Accordingly, defendants' motion to dismiss Count II for failure to state an actionable claim for conversion under Missouri law is denied.

### Count III Negligence

As a fourth basis for defendant Smith, Barney's motion to dismiss, defendant contends that Count III of plaintiffs' complaint states no actionable claim for negligence under Missouri law. Specifically, defendant

Smith, Barney alleges that no duty in favor of the plaintiffs is imposed upon defendant, and further that plaintiffs have failed to plead defendant breached any duty. Defendant Smith, Barney also asserts that Section 358.090 RSMo. 1949 in fact authorized defendant Smith, Barney to deal with the Glen Arbor Projects' partnership without making any inquiries as to the authority of the managing partner to trade on a margin account basis.

■ In addition to the statutory duties and obligations imposed by NYSE Rule 405, *see supra*, Missouri law clearly imposes general obligations and duties upon stock brokers. The general rule is that the relationship of the broker to its customer is fiduciary and confidential. Missouri common law has recognized the duty of the stock broker to make certain inquiries once it has been put on notice of facts of possible wrong doing. *See Leuzinger v. Merrill Lynch, et al.*, 396 S.W.2d 570 (Mo. en banc 1965).[2] Thus, it is the Court's opinion that at the very least NYSE Rule 405 and Missouri common law clearly impose some sort of duty owed by a stock broker to his customer.

■ Defendant Smith, Barney further alleges that plaintiffs have failed to plead the breach of duty imposed upon them by Missouri law. The Court notes paragraphs 33 and 34 of Count III which alleges that defendant Smith, Barney negligently failed to learn the essential facts relative to the partnership as its customer and the transactions made by F. Stuart Barnes. Furthermore, plaintiffs allege that defendant Smith, Barney conducted the transactions which give rise to plaintiffs' damages with knowledge of the existence of other part-

---

**2.** In *Leuzinger v. Merrill Lynch*, et al., 396 S.W.2d 570 (Mo. en banc 1965) a stock broker had authority to conduct transactions with securities held by joint tenants upon orders of either one of the joint tenants. While the court upheld the broker's actions, it found an obligation on the part of a brokerage house to discover further facts when put on notice of a problem by stating:

. . . If the stock broker knows of facts and circumstances which would lead an ordinary careful and diligent person to believe that one joint tenant of a joint brokerage account was in the process of wrongfully converting to his own uses and purposes the interest of the other joint tenant, a duty to inform the latter would arise and in such case the broker would be derelict in disbursing the whole account to the joint tenant under suspicion, without first informing the other and obtaining consent and approval to disbursement. Id. at 576.

ners but without the knowledge of the extent of authority of F. Stuart Barnes to conduct the transactions. These paragraphs clearly allege a breach of the duty imposed upon stock brokers under Missouri law. *See Leuzinger v. Merrill Lynch, et al., supra.*

Finally, defendant Smith, Barney alleges that the duty which plaintiffs contend existed is expressly nullified by statutory law in the State of Missouri. Defendant correctly asserts that Section 358.090 RSMo. 1949, expressly states that the act of any individual partner binds the partnership unless (1) the partner so acting has in fact no authority to act for the partnership in any particular matter and (2) the person with whom he is dealing has knowledge of the fact that he has no authority. Even assuming said Section is applicable to the case at bar, it is clear that plaintiffs have made out sufficient allegations to satisfy this action. The complaint is replete with allegations that the managing partner, F. Stuart Barnes, had no authority to act for the partnership in the particular matter. Additionally, plaintiffs have alleged that defendant Smith, Barney was put on notice that F. Stuart Barnes was trading on behalf of a partnership rather than individual account. It is the Court's opinion that Count III sufficiently states a cause of action for negligence under Missouri law against defendant Smith, Barney and accordingly defendants' motion to dismiss Count III is denied.

### Res Judicata

■ Defendant Smith, Barney also raises the question of whether Counts II and III of plaintiffs' complaint are barred by the doctrine of *res judicata* because an order in the state court case of *Geraldine Edens Smith, et al., v. F. Stuart Barnes, et al.,* Case No. CV77-0043, in the Circuit Court of Jackson County, Missouri, involving the same parties states:

MOTION OF DEFENDANTS SMITH BARNEY, HARRIS UPHAM AND COMPANY TO DISMISS COUNT IV OF PLAINTIFF'S FOURTH AMENDED PETITION coming on for hearing, the Court reviewing suggestions in support, suggestions in opposition, and reply suggestions, the Court hereby sustains Defendant's Smith Barney, Harris Upham and Company's motion to dismiss, and Count IV of Plaintiff's Fourth Amended Petition is hereby dismissed.

The order was rendered in response to defendant Smith, Barney's motion to dismiss Count IV of plaintiffs' fourth amended petition for failure to state a claim for *conversion.* Defendant Smith, Barney took the position that plaintiffs had failed to plead a cause of action for conversion under Count IV, and, after argument, the Circuit Court of Jackson County, Missouri, sustained said motion, thereby dismissing Count IV. Count IV was based on conversion and at no time did the Circuit Court consider a cause of action for negligence against defendant Smith, Barney, much less dismiss such a claim.

For *res judicata* to bar subsequent action, there must be identity of causes of action. *Schmitt v. Pierce,* 379 S.W.2d 548 (Mo.1964). The law is well settled that a judgment or decree is only conclusive and operates as estoppel as to the issues actually litigated and settled, and where the subsequent action is upon a different claim, the judgment in the former case only bars those issues which are actually tried. *Loud v. St. Louis Trust Co., et al.,* 298 Mo. 148, 249 S.W. 629, 639 (1923); *Abeles v. Wurdack,* 285 S.W.2d 544 (Mo.1955). Accordingly, defendant Smith, Barney's motion to dismiss as *res judicata* Count III of plaintiffs' complaint, a claim based on negligence which was never addressed by the state court, is denied.

Count II of plaintiffs' complaint, alleging a claim for conversion, presents a different issue under the doctrine of *res judicata.* The Circuit Court of Jackson County, Missouri, dismissed a similar claim in the state court action. Defendants now claim that the Circuit Court of Jackson County's order dated August 14, 1980, *supra,* bars Count II of plaintiffs' complaint in federal court. Federal courts must give full faith and credit to final determinations of state court proceedings. *Pennoyer v. Neff,* 5 Otto. 714,

95 U.S. 714, 24 L.Ed. 565 (1878); 28 U.S.C. Section 1738. In Missouri, Rule 67.03 of the Missouri Rules of Civil Procedure embodies the doctrine of *res judicata* by stating:

A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred. A dismissal with prejudice bars the assertion of the same cause of action or claim against the same party. An involuntary dismissal other than one which the party is entitled to take without prejudice and any involuntary dismissal other than one for lack of jurisdiction, for prematurity of action, for improper venue or for failure to substitute a party for a decedent shall be with prejudice unless the court in its order for dismissal shall otherwise specify.

The committee notes to the Missouri Rules state that Rule 67.03 is based on Rule 41(a) and (b) of the Federal Rules of Civil Procedure. Rule 41(b) provides:

For failure of the plaintiff to prosecute or comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. *After the plaintiff has completed the presentation of his evidence*, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, plaintiff has shown no right to relief. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue operates as an adjudication upon the merits. (Emphasis added.)

Although Rule 41(b) does not so state, federal courts have held that a dismissal under Rule 41(b) will not necessarily be accorded *res judicata* effect where the merits of the case were not reached in the prior action, and have interpreted the intent of the Rule to apply primarily where the de-

fendant was forced to incur the inconvenience and expense of preparing to meet the merits of plaintiffs' claim.[3] *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *Nasser v. Isthmian*, 331 F.2d 124 (2nd Cir. 1964); *Cosentino v. International Organizations of Masters, Mates & Pilots*, 268 F.2d 648 (8th Cir. 1959); *Madden v. Perry*, 264 F.2d 169 (7th Cir. 1959) *cert. denied* 360 U.S. 931, 79 S.Ct. 1450, 3 L.Ed.2d 1544 (1959).

The Supreme Court, for example, in *Costello v. United States, supra*, stated that it was not the purpose of Rule 41(b) to change the common law principle that a dismissal on a ground not going to merits was not ordinarily a bar to a subsequent action on the same claim. The Court noted that all the dismissals enumerated in Rule 41(b) which expressly operate as adjudication on the merits, such as failure of a plaintiff to prosecute or to comply with the Rules of Civil Procedure or to comply with an order of the court or to *present evidence* showing a right to relief on the facts and the law, primarily involve situations in which the defendants must incur the inconvenience of preparing to meet the merits of plaintiffs' complaint because there is no initial bar to the court's reaching them. It is therefore logical, concluded the Court, that a dismissal on one of the enumerated grounds should, unless the court otherwise specifies, bar a subsequent action. The Court further stated that in defining the situations where dismissals "not provided for in this Rule" also operate as an adjudication on the merits, it is reasonable to limit them to "those situations where the policy behind the enumerated grounds is equally applicable." *Id.* 365 U.S. at 286, 81 S.Ct. at 545. The Court went on to conclude that the failure of the government to file an affidavit in a previously dismissed denaturalization proceeding was not a situation calling for the application of the policy making dismissals operative as adjudication on the merits. The Court reasoned that the defendant was not put to the necessity of preparing a defense

---

**3.** See generally, Annot., Judicial Qualification of Provision of Rule 41(b) of Federal Rules of Civil Procedure that dismissal for failure to prosecute or to comply with Federal Rules or court order, and certain other dismissals, operate as adjudication upon merits, 5 A.L.R.Fed. 897 (1970).

on the merits because the government's failure to file the affidavit with the complaint required immediate dismissal of the prior proceeding. Therefore the Court held that the prior proceeding was no bar to the subsequent action.

It is this Court's opinion that Rule 67.03 of the Missouri Rules of Civil Procedure has its basis in Rule 41(b) of the Federal Rules of Civil Procedure and that the policy considerations behind Rule 41(b) enunciated in *Costello v. United States, supra*, are sound and equally applicable to Missouri Rule 67.03. Thus, a prior action which is dismissed in a Court of Missouri should not be considered an adjudication on the merits unless it involves a situation "in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the court's reaching them." In the case at bar, defendant was not put to the inconvenience of preparing to meet the merits of plaintiffs' case because there was, in fact, an initial bar to the Court's reaching said merits. The state court dismissed plaintiffs' claim for conversion before ever reaching the merits of the case. While it may initially appear that the present case may be covered by Rule 41(b) in that plaintiffs' prior action was *apparently* dismissed upon the ground that under the facts and the law, the plaintiffs showed no right to relief, it must be noted that 41(b) only bars a subsequent action if the plaintiffs' prior action was dismissed on such grounds "*after* the plaintiff has completed the presentation of his evidence." There is no indication from the state court record that plaintiff presented any evidence.[4]

Therefore, it is the opinion of this Court that the prior state court dismissal of plaintiffs' claim for conversion was not an adjudication on the merits because defendant was not put to the inconvenience and expense of meeting the merits of plaintiffs' conversion claim and accordingly, it is not a bar under the doctrine of *res judicata* to a subsequent action.

The Court, however, need not rely on the above analysis to deny defendant's motion to dismiss on the grounds of *res judicata*. A federal court will give the judgment of a state court (in the same state) the same full faith and credit as it has by law or usage in courts of the state provided (1) it is a final judgment and (2) it was adjudicated on the merits, but where the state court record fails to reveal the precise basis of its' decision leaving open the possibility of adjudication not on the merits, judgment will not be treated as *res judicata* in federal court. *Broadcast Employees of International Brotherhood of Teamsters, etc. v. International Brotherhood of Teamsters, etc.*, 419 F.Supp. 263 (D.C.Pa.1976). Similarly where a demurrer goes both to defects of form and to merits, a judgment thereon not designating between the two grounds, will be presumed in some courts to rest on the formal defects and will not bar a later action on the same claim unless it *affirmatively* appears that the determination must necessarily have been on the merits. *Bissell v. Spring Valley Township*, 124 U.S. 225, 8 S.Ct. 495, 31 L.Ed. 411 (1888); *Griffin v. Seymour*, 15 Iowa 30 (1863); *Goldsborough v. Hewitt*, 23 Okl. 66, 99 P. 907 (1909); *contra, Schroers v. Fisk*, 10 Colo. 599, 16 P. 285 (1888).

The state court order set out above reveals no basis for the state court decision. Accordingly, the possibility is left open, as it was in *Broadcast Employees of International Brotherhood of Teamsters, etc., supra*, that the plaintiffs' state court claim for conversion was dismissed for some reason other than the merits of said claim. Furthermore, because defendants' motion to dismiss the state court conversion claim went to defects of form and merit, the dismissal thereon, not distinguishing between the two grounds, will be presumed by this Court, as it was in *Bissell v. Spring Valley Township, supra*, to rest upon the formal defects and not bar this subsequent action on the same claim. If, at a later stage of these proceedings, however, de-

4. While the state court records reveal that a hearing was held concerning defendants' motion to dismiss, plaintiffs' state court claim for conversion, it does not indicate whether any evidence was requested by the court or offered by the parties at the hearing.

fendants can prove the identity of claims in this action and the state court claim which was dismissed, the Court will reconsider defendants' motion to dismiss based upon *res judicata* at that time. Accordingly, defendants' motion to dismiss Count II of the plaintiffs' complaint under the doctrine of *res judicata* is denied without prejudice.

### Statute of Limitations

As further grounds for their motion to dismiss, defendants contend that plaintiffs' claim for relief are barred by the applicable five-year statute of limitations, RSMo. §§ 516.120 and 516.100. Defendants claim that plaintiffs are barred from recovering damages for any misconduct which may have occurred more than five years prior to June 20, 1980, the date on which this suit was brought. Plaintiffs allege that defendants acts were of a continuing nature from the mid 1960's to and including the termination of the relationship between the partnership and defendant, Smith, Barney, on or about June 27, 1975. Plaintiffs have alleged that they did not discover the existence of the unauthorized margin transactions, liability and interest charges for the margin accounts with defendant Smith, Barney until December 27, 1975. Accordingly, plaintiffs contend that because the action was filed against defendants on June 20, 1980, it is clearly within the five-year statute of limitations.

It is the Court's opinion that defendants' alleged misconduct was of a continuing nature. Indeed Section 516.100 RSMo. 1949, contemplates acts of such a continuing nature by stating:

> ... [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and a full and complete relief obtained.

It is the Court's opinion that the alleged misconduct of defendant was of a continuing nature and that Section 516.100 contemplates such continuing acts by starting the statute of limitations running when the *last*

*item* of damage capable of ascertainment is sustained. Therefore, plaintiffs' cause of action accrued June 27, 1975, and plaintiffs brought this action within five years of that date. Therefore, defendants' motion to dismiss on the grounds that the applicable statutes of limitations barred the present action, is denied.

### Accounting and Settlement As Conditions Precedent

As final grounds for its motion to dismiss, defendants contend that prosecution of plaintiffs' claims is barred because the accounting and settlement between the partners of the Glen Arbor Projects' Partnership is a condition precedent to the instant action against Smith, Barney. While the general rule is that an accounting and settlement is a condition precedent to an action by partners of a partnership against fellow partners, such a rule has no application to the claim by partners, on behalf of the partnership, against a third party such as Smith, Barney. Therefore, defendants contention is without merit and accordingly its motion to dismiss on such grounds is denied.

### CONCLUSION

For the reasons stated above and in the best interests of justice, it is

ORDERED, that defendant Beryl Lee Beckman's motion to dismiss filed August 11, 1980, be, and hereby is, denied, and it is further

ORDERED, that defendants F. Stuart Barnes and Alice Barnes' motion to dismiss filed August 12, 1980, be, and hereby is, denied, and it is further

ORDERED, that defendant Smith, Barney's motion to dismiss filed September 19, 1980, be, and hereby is, denied, with the reservation that said defendant's motion to dismiss based upon the grounds of *res judicata*, is denied at this time without prejudice.