An appropriate judgment shall accompany this memorandum and order.

### JUDGMENT

In accordance with the memorandum and order filed this date and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff shall have judgment over defendant in the amount of $47,629.00, with each party bearing its own costs.

**PENALOSA COOPERATIVE EXCHANGE, Plaintiff,**

v.

**A.S. POLONYI COMPANY, Defendant.**

**No. 88–0006–CV–W–9.**

United States District Court,
W.D. Missouri, W.D.

July 26, 1990.

Bruce B. Waugh, Gilliland & Hayes, P.A., Kansas City, Mo., Gerald L. Green, Gilliland, Hayes, Schmidt, Dillon & Green, P.A., Hutchinson, Kan., for plaintiff.

James F. Duncan, Brian D. Williams, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Douglas C. McKenna, Watson, Ess, Marshall & Enggas, Olathe, Kan., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

BARTLETT, District Judge.

Defendant A.S. Polonyi Company moves to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. In its Complaint, plaintiff Penalosa Cooperative Exchange asserts six claims for relief: negligence (Count I), conversion (Count II), conspiracy to commit conversion (Count III), violation of Missouri's codification of the Uniform Fiduciaries Act (Count IV), money had and received (Count V) and breach of duty to know customers (Count VI).

Plaintiff alleges that from September 1983, through December 1985, Wayne Winter, its general manager, embezzled funds from plaintiff and used the money to speculate in the commodities market for his own account. During that time, Winter employed defendant as his commodities broker. According to plaintiff, Winter's trades from 1983 through 1985 involved approximately $1,276,500 of plaintiff's money and ultimately resulted in losses to plaintiff of $810,500.

### I. Standard for Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted

"In passing on a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

### II. Choice of Law

Neither party addressed the question of whether Missouri or Kansas law provides the basis for deciding whether plaintiff has stated claims for relief. Their failure to do so resulted in the citation of legal authority from multiple jurisdictions. For instance, in its Suggestions in Support of Motion to Dismiss and in its Reply, defendant relies on both Kansas and Missouri law without explaining why it chose to cite the law that it did. Defendant also relies on the decisions of federal and state courts with absolutely no connection to this controversy without stating that there is no controlling authority.

On the other hand, plaintiff addresses the choice of law problem as follows:

> Throughout defendant's Motion to Dismiss reference is made to Chapter 84 of the Kansas Statutes Annotated. This case arises out of the embezzlement of funds in Kansas and the receipt of those funds by the defendant in Missouri. Conflict of law questions may exist in this case. For purposes of this brief, plaintiff does not admit that Kansas substantive law governs should a conflict between the laws of Kansas and Missouri arise. Therefore, since the UCC provisions at issue are identical in each state, plaintiff will make reference to the UCC statute rather than a particular state's codification of that law.

Plaintiff's opposition to defendant's Motion to Dismiss at p. 6, n. 1.

Although the Kansas and Missouri UCC statutes at issue in this case are identical, different interpretations are possible. Therefore, neither party can rely on something called "the UCC statute."

The parties have discussed choice of law issues in connection with defendant's Motion for Summary Judgment, particularly whether the Kansas or Missouri statute of

limitations applies.[1] Based on the record presented in connection with the parties' Motions for Summary Judgment, I am able to resolve the choice of law issues necessary to decide defendant's Motion to Dismiss.

"A federal district court in Missouri "sitting in diversity must apply Missouri's conflict of law principles." *Birdsell v. Holiday Inns*, 852 F.2d 1078, 1079 (8th Cir. 1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). "Missouri has adopted the most significant contacts test as promulgated by Restatement (Second) of Conflict of Laws § 145 (1971)." *See, e.g., Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. en banc 1969); *Birdsell* at 1079, n. 5.

In *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 442 (Mo.App.1986), the court described the most significant contacts test:

> Under the most significant contacts test, a choice of law is made based on the predominance of contacts with the state whose law is to prevail. The contacts to be taken into account are:
>
> '(a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> The contacts are to be evaluated according to their relative importance with respect to the particular issue.'

Neither party analyzes Restatement (Second) of Conflict of Laws § 145 in light of the facts of this case.

### A. Place Where Injury Occurred

██ Plaintiff alleges that the losses it suffered were caused when Polonyi negligently accepted checks written by Winter and received wire transfers authorized by Winter and converted those checks and wire transfers.

Polonyi's offices are located in Kansas City, Missouri. Exhibit C, Plaintiff's Motion for Partial Summary Judgment. The Polonyi bank account into which Winter wired money and the bank account into which Winter's checks were deposited was located in Kansas City, Missouri. Exhibit I, Plaintiff's Motion for Partial Summary Judgment. Therefore, when Polonyi used the money on deposit in that account to pay for trades allegedly not authorized by plaintiff, the money was taken from the Missouri account. Accordingly, any injury or loss sustained by plaintiff occurred in Missouri.

### B. Place Where Conduct Causing Injury Occurred

Any allegedly wrongful conduct on the part of Polonyi that caused plaintiff's losses occurred in Missouri when the plaintiff's funds allegedly were used improperly.

### C. Domicile, Residence, Nationality, Place of Business of the Parties

The plaintiff's business is located in Kansas. The defendant's business is located in Missouri.

### D. Place Where Relationship, If Any, Between the Parties is Centered

The parties had no relationship between themselves. Therefore, there was no place where the relationship was centered.

Because the injury to plaintiff occurred in Missouri and because defendant's allegedly wrongful conduct occurred in Missouri, and because the other factors favor neither Missouri nor Kansas, Missouri has the most significant contacts with respect to the issues in this case. Accordingly, Missouri substantive law governs in this case.

### III. *Defendant Has Failed to Establish That Plaintiff's Common Law Claims Are Displaced by §§ 3-419, 3-305 and 3-418 of the UCC*

Defendant contends that because the essence of plaintiff's claim is "conversion of

---

1. Because the parties have more fully briefed the statute of limitations issue in connection with defendant's Motion for Summary Judgment, I will discuss that issue in a separate order deciding that motion. That order will include, of course, a discussion of which state's statute of limitations is applicable in this case.

negotiable instruments, all its common law claims are displaced by § 3–419 of the UCC." Defendant argues that "plaintiff's real complaint is that its general manager was unauthorized to sign its checks or make wire transfers for his personal trading. . . ." According to defendant, the allocation of loss from unauthorized signatures "is precisely the kind of dispute which Article 3 of the UCC was carefully designed and drafted to resolve."

In making this argument, defendant relies primarily on the Kansas version of §§ 3–419(1)(b), 3–305 and 3–418 of the UCC. For reasons previously discussed, Missouri substantive law governs this case.

V.A.M.S. 400.1–103 provides in part: "Unless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions. 'Nothing short of an express code provision limiting plaintiff's remedy' demonstrates displacement." *Morgan Guar. Trust Co. v. American Sav. and Loan*, 804 F.2d 1487, 1495 (9th Cir.1986) (quoting *Hechter v. New York Life Ins. Co.*, 46 N.Y.2d 34, 39, 385 N.E.2d 551, 554, 412 N.Y.S.2d 812, 815 (1978)).

V.A.M.S. § 400.3–419(1)(b) is entitled "Conversion of Instrument—Innocent Representative" and provides in pertinent part: "An instrument is converted when . . . (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it. . . ."

■ V.A.M.S. 400.3–419(1)(b) does not displace plaintiff's common law theories of recovery. V.A.M.S. 400.3–419(1)(b) pertains only to the conversion of negotiable instruments and "adopts the generally recognized rule that a refusal to return it [a negotiable instrument] on demand is a conversion." Comment 2 to § 400.3–419. Plaintiff does not allege that negotiable instruments were delivered to defendant *for payment* and that defendant refused to pay or *return* the instruments. Defendant was the payee of the checks and wire transfers not the "person" to whom the instruments were delivered for payment as those words are used in § 400.3–419(1)(b). Other Code sections relied on by defendant,

e.g., V.A.M.S. 400.3–305 (holder in due course) and 400.3–418 (final payment) may be available as defenses to plaintiff's claims but these provisions do not preclude plaintiff from asserting claims.

■ "Although it may be unusual to uphold an affirmative defense at the pleading stage, when the defense is established on the face of the complaint, dismissal is appropriate." *Burlison v. United States*, 627 F.2d 119, 122 (8th Cir.1980). The allegations in plaintiff's Complaint do not establish that defendant was a holder in due course or that the final payment provision applies. Therefore, at the pleading stage, defendant has not established that plaintiff's common law claims are displaced by the UCC.

### IV. *Some, But Not All, of the Counts in Plaintiff's Complaint Fail to State a Cause of Action*

Defendant argues that each count of plaintiff's Complaint should be dismissed for failure to state a cause of action.

#### *Count I: Negligence*

In Count I, plaintiff alleges that "defendant Poloyni had a duty to conduct its business transactions in a commercially reasonable manner, in accordance with the standards and rules of its profession and in good faith. . . ." Complaint at ¶ 13. Plaintiff alleges that defendant breached its duty in a variety of ways including:

a. In negligently and carelessly failing to use due diligence to learn the essential facts relative to Winter as a customer, to Winter's personal trading account, and to Winter's numerous trading activities;

. . .

c. In negligently and carelessly failing to investigate and inquire into Winter's authority to write checks and direct wire transfers, when defendant knew or should have known that Winter was funding his personal trading with money from plaintiff's account.

Complaint at ¶ 13.

Plaintiff further alleges that: "Due to defendant's negligence, plaintiff was di-

rectly and proximately caused to suffer considerable financial damage." Complaint at ¶ 14.

Defendant argues that Count I should be dismissed because 1) plaintiff fails to allege that defendant owed any duty of care to plaintiff and 2) that no duty of care exists as a matter of law on the part of defendant to protect plaintiff from injury.

> A petition seeking damages for actionable negligence must allege 'ultimate facts' which, if proven, show (1) existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure.

*Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976) (citations omitted). "The duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Byers v. Spaulding,* 725 S.W.2d 893, 895 (Mo.App.1987). " '[N]egligence' is strictly nonfeasance or a wrongful act resulting from inattention or carelessness and not from design. Whatever grade it be, 'negligence' does not include a purpose to do a wrongful act...." *Harris v. Penninger,* 613 S.W.2d 211, 214 (Mo. App.1981).

Although plaintiff alleges in Count I that defendant had a duty to protect plaintiff from injury, the existence of such a duty as a matter of law is the issue raised by defendant. Plaintiff contends that "while ordinarily the law imposes no duty upon a creditor to investigate the source of funds received in the regular course of business, such a duty has been held to arise under circumstances such as the ones presented by this case." Plaintiff's Opposition at 18. However, the cases cited by plaintiff do not support the position that defendant owed a duty of care to plaintiff under Missouri law.

In *Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978), the court applies California, not Missouri, law. Furthermore, the court in *Sun 'n Sand* imposed a "narrowly circumscribed" duty on a bank to investigate the source of funds deposited. *Id.,* 148 Cal.Rptr. at 346, 582 P.2d at 937. This duty is activated "only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to a payee bank by a third party seeking to negotiate the check for his own benefit." *Id.* These are not the facts of this case.

In *Smith v. Smith Barney,* 505 F.Supp. 1380 (W.D.Mo.1981), also cited by plaintiff, the court concluded that a stock broker owed its customer the duty to make certain inquiries once it had been put on notice of possible wrongdoing. The court made clear that the duty imposed on the stock broker arose form the stock broker-customer relationship. In this case, plaintiff was not defendant's customer. Thus, the relationship giving rise to the duty in *Smith* does not exist in this case.

Lastly, plaintiff relies on *Fry v. Farmers & Merchants Bank of Cape,* 561 S.W.2d 392 (Mo.App.1978). In *Fry,* the court does not discuss the existence of any duty whatsoever.

Defendant cites *Clayton Brokerage of St. Louis, Inc. v. Lowrance,* 592 S.W.2d 218 (Mo.App.1979) and *United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co.,* 153 S.W.2d 752 (Mo.App. 1941) for the proposition that defendant in this case owed no duty of care to plaintiff.

In *Clayton Brokerage,* R.D. Lowrance was in the cattle business and maintained a commodity trading account at Clayton Brokerage. Ray Olson, another customer of Clayton Brokerage, bought cattle from Lowrance. Through a series of transactions, Olson defrauded Clayton Brokerage into transferring $84,000 into a checking account maintained by Lowrance. Clayton Brokerage subsequently sued Lowrance to recover the money on the theory of restitution and unjust enrichment. The court summarized Clayton Brokerage's argument as follows:

> Clayton argues that a lack of knowledge on Lowrance's part as to the tainted source of the $84,000 was not enough to bar Clayton's right of restitution premised on the doctrine of unjust enrichment if Lowrance could have known of its

tainted source in the exercise of reasonable care. In reality, Clayton argues that the law placed an affirmative duty upon Lowrance to investigate or trace the source of the $84,000 deposited by Olson in Lowrance's cattle buying account at the First American Bank of Skidmore.

*Clayton Brokerage,* 592 S.W.2d at 226. After citing several cases, the court said that "none [of them] imposed an affirmative duty upon the recipient to check the source of funds received in order to avoid making restitution to the original transferor. Instead, they speak in terms of lack of knowledge and good faith and not in terms of an affirmative duty to investigate the source or character of such funds." *Id.* at 227. In addition, the court cited *Newco Land Co. v. Martin,* 358 Mo. 99, 213 S.W.2d 504, 509 (1948) stating that " 'there is no obligation on a transferee to investigate a transferor's title or source of acquisition of money when accepted honestly and in good faith.' " *Id.* In *Clayton Brokerage,* the court found that Lowrance did not owe Clayton Brokerage an affirmative duty to check the source of the funds that had been deposited by Olson in his account.

In *United States Fidelity and Guaranty Co. v. Mississippi Valley Trust Co.,* 153 S.W.2d 752 (Mo.App.1941) plaintiff, as surety on a bond for the guardian of a trust, claimed that the defendant bank was negligent in permitting the guardian to deposit into his personal checking account a check addressed to him in his capacity as a guardian and to subsequently withdraw funds from that account. The court quoted the *Restatement of the Law of Trusts,* § 324d, pp. 966–67:

> Although the bank knows that the funds deposited are trust funds, and the deposit is made in the name of the trustee personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit; and although the deposit is made in a breach of trust, the bank in receiving the deposit is not liable for participation in the breach of trust, in the absence of further circumstances known

to the bank indicating that the trustee is committing a breach of trust.

*United States Fidelity,* 153 S.W.2d at 758.

■ These cases stand for the proposition that the transferee of money does not have a general duty to investigate the transferor's title or to determine the source of money accepted *honestly in good faith.* These cases also hold that a transferee of funds may become liable to the true owner if a transferee accepts funds dishonestly and in bad faith. The issue of whether a transferee acts dishonestly and in bad faith entails a determination of whether the transferee intended to do a wrongful act. However, a negligence cause of action is not available for claims of injury caused by intentional wrongful acts.

Plaintiff states:

> While no duty may exist to check the source of funds received when the transferee receives such in good faith, a duty most certainly does exist when the transferee has notice of claims against such funds. The issue of whether such transferee acted honestly and in good faith is a fact issue and obviously not the subject of a motion to dismiss.

Opposition to defendant's Motion to Dismiss at p. 22.

Whether defendant acted honestly and in good faith may indeed be fact issues. However, they are irrelevant to a negligence cause of action. Because plaintiff has failed to establish that defendant owed it a duty of care as a matter of Missouri law under a negligence theory, Count I will be dismissed.

### Count II: Conversion

In Count II, plaintiff alleges:

18. Defendant Polonyi knew the funds transferred to it by Winter to pay for Winter's trading activities were the funds of plaintiff.

19. Defendant Polonyi knew that Winter was not authorized to use plaintiff's funds for his personal use.

20. Defendant Polonyi failed to notify plaintiff of Winter's activities.

21. Defendant Polonyi accepted the funds despite plaintiff's ownership right in said funds, and plaintiff's immediate right to possession of said funds.

22. Plaintiff Penalosa has demanded the return of its funds, which defendant has refused.

23. Plaintiff Penalosa has been damaged by Polonyi's conversion of the funds, and, after all set-offs have been taken into account, Penalosa has been damaged in the amount of $800,000, exclusive of interest and costs.

Complaint at ¶¶ 18–23.

■ Defendant argues that a cause of action will not lie for conversion of money under Missouri law unless the money has retained a separate and distinguishable identity. Because plaintiff has not alleged that Polonyi converted specific and identifiable instruments or currency, defendant asserts that plaintiff's claim for conversion must fail.

In *Atlas Sec. Services, Inc. v. Git–N–Go, Inc.*, 728 S.W.2d 727, 730 (Mo.App.1987), the court stated:

In Missouri, '[a]ny distinct act of dominion wrongfully exerted over the personal property of another in denial of or inconsistent with the latter's right therein constitutes conversion.' ...

'As understood in this definition, personal property includes choses in action such as notes, bills, checks, and other representatives of value, for a representative of value is itself a thing of value. A check, such as the one in controversy, is so regarded ... the measure of damages is prima facie the face value of the paper converted.'

Citations omitted.

Although plaintiff alleges only that "funds" were converted in its Complaint, in its Suggestions plaintiff makes clear that it intended "funds" to mean checks and wire transfers. Viewing the allegations in the Complaint in the light most favorable to plaintiff and drawing reasonable inferences from the facts alleged, plaintiff has alleged that defendant has wrongfully exerted dominion over its funds represented by checks and wire transfers in denial of or

inconsistent with plaintiff's right to those funds. Plaintiff has, therefore, adequately alleged a claim for conversion. Accordingly, Count II will not be dismissed.

### Count III: Civil Conspiracy to Commit Conversion

After the close of discovery, plaintiff stated that it was abandoning its claim for conspiracy against Polonyi contained in Count III of the Complaint. *See* plaintiff's answer to defendant's interrogatory seven. Therefore, Count III will be dismissed.

### Count IV: Violation of the Missouri Uniform Fiduciaries Act

In Count IV, plaintiff makes the following allegations:

30. Winter, by virtue of his authority to write checks and issue wire transfers on plaintiff Penalosa's accounts for payments directly related to Penalosa's business, had a fiduciary duty to Penalosa. Winter had no authority to write checks or issue wire transfers against Penalosa's accounts for personal transactions, including personal trading in commodities.

31. Winter, by using Penalosa's funds for personal trading in commodities, breached his fiduciary duty to Penalosa.

32. Defendant Polonyi had notice that Winter was breaching his fiduciary duty. Polonyi had either actual knowledge of the breach, or knowledge of facts which indicated that Polonyi's taking the funds amounted to bad faith by Polonyi.

33. The payments by Winter to defendant Polonyi with Penalosa's funds for payment to Polonyi for a personal debt of Winter, and were known by Polonyi to be for the personal benefit of Winter.

34. Defendant Polonyi benefited from the proceeds of the funds misappropriated by Winter, by collecting commissions for trades made on Winter's behalf.

35. Defendant Polonyi's acceptance of Penalosa's funds sent by Winter to satisfy Winter's personal debts were in violation of the laws of Missouri and Polonyi is thus liable to Penalosa for the amount

of the funds Winter paid to Polonyi, plus interest and consequential damages.

36. Plaintiff Penalosa was damaged by Polonyi's acceptance of Penalosa's funds given by Winter in breach of his fiduciary duty....

Complaint at ¶¶ 30–36.

■ In its Opposition to defendant's Motion to Dismiss, plaintiff claims that "the laws of Missouri" that defendant allegedly violated is Missouri's codification of the Uniform Fiduciaries Act, V.A.M.S. § 456.270 which states:

> If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that this action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.

Defendant argues that this statute does not apply to this case. However, accepting the allegations of the Complaint as true, Winter had a fiduciary duty to Penalosa, defendant knew about Winter's fiduciary relationship and defendant knew Winter was using plaintiff's funds for his personal benefit. Therefore, I cannot say that, viewing the facts alleged in the Complaint in the light most favorable to plaintiff, plaintiff cannot prove any set of facts that would entitle it to relief. Accordingly, Count IV will not be dismissed.

### Count V: Money Had and Received

In Count V, plaintiff alleges:

39. The funds sent by Winter to Polonyi belonged to plaintiff Penalosa.

40. Winter misappropriated and embezzled plaintiff Penalosa's funds by giving them to defendant Polonyi to pay for commodities trades.

41. Although defendant Polonyi knew that the funds were plaintiff Penalosa's funds, defendant retained the funds and effectuated the commodity trades. Defendant Polonyi received commissions as a benefit of commodity trades done on Winter's behalf.

42. Defendant Polonyi, by accepting the funds and retaining the benefits of the trades, ratified Winter's actions and, therefore, assumed the burdens and liabilities of the acts.

43. Defendant Polonyi is thus liable to plaintiff Penalosa under the doctrine of 'money had and received.'

Complaint at ¶¶ 39–43.

In *Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo.App.1986), the court emphasized the breadth of an action for money had and received:

> An action for money had and received is a very broad and flexible action, which seeks to reach monies which in equity and good conscience ought not to be retained by the defendant but ought to be paid to plaintiff. It is a legal action, but based upon equitable principles. The tendency of the courts is to widen rather than restrict its scope.... It has been held in a number of cases both in Missouri and elsewhere that the action is appropriate to recover money damages for breach or abuse of a trust, where the plaintiff does not seek to impress as [sic] trust upon and to recover specific property....

■ In order to sustain an action for money had and received, there must be no consideration for the money or the consid-

eration must have failed. *Ryan v. Tinker*, 744 S.W.2d 502, 505 (Mo.App.1988).

 Defendant contends that defendant gave full and adequate consideration for the money it received from Winter by executing the commodity trades requested by Winter.

However, plaintiff alleges that defendant charged commissions on trades ordered by Winter knowing that Winter was using plaintiff's funds. Although defendant may have provided the services requested by Winter, plaintiff, the owner of the funds, received no consideration from defendant. (In *Ryan*, the court concluded that plaintiff received the consideration for which she bargained. 744 S.W.2d at 505.)

In this case, a cause of action for money had and received will lie because plaintiff has alleged that defendant has received or obtained money from plaintiff under circumstances that would in equity and good conscience call for defendant to pay it to plaintiff.

### Count VI: Breach of Duty to "Know Your Customer"

 For the reasons stated in defendant's suggestions in support of its motion and in its reply brief, Count VI will be dismissed. Specifically, plaintiff fails to state a cause of action under the Commodities Exchange Act, 7 U.S.C. § 25, because plaintiff was not "any other person" who "received trading advice" or who "made ... any contract of sale of any commodity ... or deposited with or paid ... money ... in connection with any order to make such a contract."

Furthermore, plaintiff has failed to state a cause of action under Missouri common law for breach of a broker's duty to know its customer. Plaintiff's cases, i.e., *Smith v. Smith–Barney*, 505 F.Supp. 1380 (W.D. Mo.1981) and *Leuzinger v. Merrill Lynch*, 396 S.W.2d 570 (Mo.1965), establish only that a broker has a duty to its customer. Plaintiff alleges that it was never defendant's customer. Therefore, plaintiff has failed to state a cause of action in Count VI.

### V. Conclusion

Accordingly, it is hereby ORDERED that:

1) defendant's Motion to Dismiss is granted in part and denied in part;

2) defendant's Motion to Dismiss Counts I, III and VI is granted; and

3) defendant's Motion to Dismiss Counts II, IV and V is denied.